## IN THE CIRCUIT COURT OF MONONGALIA COUNTY,
## WEST VIRGINIA

**WEST VIRGINIA UNIVERSITY**
**BOARD OF GOVERNORS for and on**
**behalf of WEST VIRGINIA UNIVERSITY,**

                    **Plaintiff,**

**v.**                              **Civil Action No.:** _07-C-851_

**RICHARD RODRIGUEZ,**

                    **Defendant.**

### COMPLAINT FOR DECLARATORY JUDGMENT AND OTHER RELIEF

COMES NOW the plaintiff, West Virginia University Board of Governors for and on behalf of West Virginia University, by counsel, pursuant to Rule 57 of the West Virginia Rules of Civil Procedure and W.Va. Code § 55-13-1 *et seq.* and for its complaint against the defendant, Richard Rodriguez ["Rodriguez"], alleges as follows:

### PARTIES

1.     The West Virginia University Board of Governors, created by the legislature of West Virginia pursuant to W.Va. Code § 18B-2A-1 *et seq.*, is the governing body with the mission of general supervision and control over the academic and business affairs of West Virginia University. The West Virginia University Board of Governors [hereinafter, the "University"] is a resident of the State of West Virginia.

2.     Rodriguez is a resident of the State of West Virginia and a resident of the State of West Virginia at all times relevant to this action. Rodriguez served as Head Coach of the West Virginia University football team up to December 19, 2007.

FILED

DEC 2 7 2007

JEAN FRIEND
CIRCUIT CLERK

## JURISDICTION

3.       This complaint is properly before this Court as both parties are residents of the State of West Virginia and the contract at issue was made and entered into in Monongalia County, West Virginia, for performance in whole or in part in Monongalia County, West Virginia.

## NATURE OF ACTION

4.       Pursuant to W.Va. Code § 55-13-1 *et seq.* and Rule 57 of the West Virginia Rules of Civil Procedure, the University seeks a declaratory judgment regarding the obligations of Rodriguez pursuant to the terms and conditions of the "Employment Agreement", including "First Amendment to the Employment Agreement for Richard Rodriguez" [the "First Amendment"] and "Second Amendment to the Employment Agreement for Richard Rodriguez" [the "Second Amendment"] [collectively referred to herein, at times, as the "Agreement"], entered into between the parties hereto. The "Employment Agreement" is attached as Exhibit "A." The First Amendment is attached as Exhibit "B." The Second Amendment is attached as Exhibit "C."

5.       Specifically, the University seeks a declaratory judgment that Rodriguez is required to pay the University Four Million Dollars ($4,000,000.00) as a result of his voluntary termination of the Agreement by virtue of his resignation from the position of Head Coach of the West Virginia University football team prior to the expiration of the Agreement and prior to August 31, 2008.

6.       The University seeks a declaratory judgment that the University did not materially and substantially breach the Agreement.

2

7.     The University seeks a declaratory judgment that Rodriguez never provided written notice to the University of any material and substantial breach as required by Article V(D)(1) of the Agreement and amended by the Second Amendment.

## JUSTICIABLE CONTROVERSY

8.     This matter is appropriate for declaratory judgment as a justiciable controversy exists between the parties as the University is informed and believes that Rodriguez does not intend to abide by the terms of the Agreement.

## CHOICE OF LAW

9.     West Virginia law governs the validity and interpretation of the Agreement pursuant to the terms of the Agreement itself. Employment Agreement at ¶ XII, Ex. A.

## SUBSTANTIVE ALLEGATIONS

10.     On or about December 21, 2002, Rodriguez entered into the Employment Agreement with the University to serve as Head Coach of the West Virginia University football team for a term of seven (7) years beginning on January 1, 2003 and terminating on January 15, 2010. Employment Agreement at ¶ II, Ex. A.

11.     On or about June 24, 2006, Rodriguez entered into the First Amendment with the University amending the Agreement. The First Amendment, among other things, increased Rodriguez's compensation and provided for the payment by Rodriguez of liquidated damages to the University in the event Rodriguez terminated the Agreement prior to January 15, 2013.

12.     On or about August 24, 2007, Rodriguez entered into the Second Amendment with the University further amending the Agreement. The Second Amendment was effective retroactively on December 8, 2006. The Second Amendment again increased Rodriguez's compensation.

13.     The Second Amendment amended the Agreement, in part, by extending the term of the Agreement to January 15, 2014 and increasing the amount of liquidated damages Rodriguez must pay to the University in the event he terminated his employment under the Agreement.  Second Amendment at ¶¶ 1, 6 (p. 4), Ex. C.

14.     The Second Amendment deleted Article V(D) of the Agreement, as amended by the First Amendment, and replaced it, in relevant part, with the following:

> (D)     Termination by Coach.
>
> (1)     In the event that Coach terminates his employment under this Agreement because of material and substantial breach of the Agreement by University, if Coach has given written notice to the University within ninety (90) days of such breach and the breach has gone uncured for thirty (30) days after the University's receipt of such written notice, University will pay Coach:
>
> * * *
>
> (2)     Except as provided in Article V(B), if Coach terminates his employment under this Agreement for any reason other than as set forth under Article V(D)(1):
>
> * * *
>
> (b)     Unless Coach terminates his employment under this Agreement due to a permanent retirement from the University and all other employment with any coaching responsibility with an institution of higher education, in addition to all other forfeitures and penalties provided herein, Coach will pay University the sum of ... (b) Four Million Dollars ($4,000,000.00), payable, as further described below, within two years of termination if termination occurs after August 31, 2007 and on or before August 31, 2008[.] ... This sum shall be deemed to be liquidated damages and extinguish all

4

rights of University to any further payment from Coach. All sums required to be paid by Coach to the University under this Section within two years shall be payable according to the following schedule: one-third due (30) days after termination; one-third due on the one year anniversary of termination; and one-third due on the second anniversary of termination.

Second Amendment at ¶ 6(D)(2)(b), Ex. C.

15.     The Second Amendment further added new Articles XVI and XVII to the Agreement, which provide as follows:

### XVI. ASSISTANT COACHES' SALARY POOL

The University shall make a one-time supplemental payment of One Hundred Thousand Dollars ($100,000) to the assistant coaches' salary pool by or before July 1, 2007. In addition, from July 21, 2006 through to the end of the term of this Agreement, the University shall make an annual Fifty Thousand Dollars ($50,000) payment to the assistant coaches' salary pool.

* * *

### XVII. PUSKAR CENTER RENOVATIONS

The Department of Intercollegiate Athletics hereby commits to the construction of and renovations to certain facilities as follows: (1) Solicitation of private financial contributions for the academic center in the amount of Two Million Two Hundred Thousand Dollars ($2,200,000) by December 2006 with construction to commence by the first quarter of 2007; and (2) Solicitation of private financial contributions for the locker room in the amount of Four Million Dollars ($4,000,000) by December 2007 with construction to commence by the first quarter of 2008.

Second Amendment at ¶¶ 10-11, Ex. C.

16.     As provided in the Agreement, the Agreement was the result of arms length negotiation between Rodriguez and the University and their respective legal counsel and tax advisors. Second Amendment at ¶ 8, Ex. C. Rodriguez and the University were represented by

counsel and advisors of their own choosing and had the full benefit of such counsel through the negotiation of the terms of the Agreement and the drafting and execution of the Agreement. Id. Rodriguez and the University entered into the Agreement freely and voluntarily and with the full intent to be bound thereby. Id.

17.     Also as provided in the Agreement, Rodriguez and the University mutually understood that the Agreement contained all of the terms and conditions to which the parties had agreed and that no other understandings or representations, either oral or written, regarding the subject matter of the Agreement existed or bound the parties. Employment Agreement at ¶ X, Ex. A. Rodriguez and the University further agreed that any modification, amendment, or addendum to the Agreement was effective only if made in writing and signed by both parties. Id.

18.     Rodriguez never provided written notice to the University, as required by Article V(D)(1) of the Agreement and amended by the Second Amendment, of any material and substantial breach of the Agreement by the University.

19.     The University fulfilled all material and substantial terms of the Agreement as required as of the date of Rodriguez's termination of the Agreement, including, but not limited to, the supplemental payment to the assistant coaches' salary pool and certain Puskar Center renovations.

20.     Upon information and belief, on or before December 14, 2007 and prior to Rodriguez's termination of the Agreement, Rodriguez engaged in discussions with the University of Michigan regarding employment as the Head Coach of the University of Michigan football team. Said discussions occurred without the prior knowledge or consent of the University.

21. Upon information and belief, on or before December 16, 2007 and prior to his resignation, Rodriguez and/or persons on his behalf communicated with student athlete recruits for the 2008 football season regarding his employment as the Head Coach of the University of Michigan football team. Said discussions occurred without the prior knowledge or consent of the University.

22. Rodriguez voluntarily resigned from the position as the Head Coach of the West Virginia football team effective December 19, 2007. See Correspondence from Rodriguez to Ed Pastilong (Dec. 18, 2007), attached as Exhibit "D." Accordingly, Rodriguez resigned prior to August 31, 2008.

23. By virtue of Rodriguez's voluntary termination of the Agreement and anticipated employment as the Head Coach of the University of Michigan football team, Rodriguez's resignation was not the result of Rodriguez's death, disability, or permanent retirement. Termination of the Agreement due to death, disability, or permanent retirement do not require the payment of liquidated damages to the University.

24. Upon information and belief, Rodriguez accepted the position of Head Coach of the University of Michigan football team prior to resigning as Head Coach of the West Virginia University football team.

Based on the foregoing, the University seeks the following declaratory judgment:

(a) The Agreement, including the First Amendment and the Second Amendment, is a valid and enforceable contract.

(b) Rodriguez is required to pay the University liquidated damages in the amount of Four Million Dollars ($4,000,000.00) arising out of his termination of his employment under the Agreement, specifically the Second Amendment.

7

(c)     Rodriguez is required to pay the University pre-judgment interest on all sums not

paid to the University by the time required by the Agreement, specifically the

Second Amendment.

(d)     The University has not materially or substantially breached the Agreement.

WHEREFORE, the plaintiff, West Virginia University Board of Governors for and on

behalf of West Virginia University, seeks the above declaratory judgment and, as a result

thereof, payment of Four Million Dollars ($4,000,000.00) from the defendant, Richard

Rodriguez. The University further seeks reimbursement for any fees and/or costs sustained as a

result of this declaratory judgment and any other relief that the Court deems just and proper.

The plaintiff, West Virginia University Board of Governors for and on behalf of West

Virginia University, demands a trial by jury for all issues so triable.

> **WEST VIRGINIA UNIVERSITY**
> **BOARD OF GOVERNORS for and on**
> **behalf of WEST VIRGINIA**
> **UNIVERSITY,**
>
> By Counsel,

Thomas V. Flaherty (WV Bar No. 1213)
Jeffrey M. Wakefield (WV Bar No. 3894)
Jaclyn A. Bryk (WV Bar No. 9969)
Flaherty, Sensabaugh & Bonasso, PLLC
Post Office Box 3843
Charleston, West Virginia 25338-3843
Telephone: (304) 345-0200
Facsimile: (304) 345-0260

8

COPY

# EMPLOYMENT AGREEMENT

**THIS EMPLOYMENT AGREEMENT** (the "Agreement") is made this $21^{th}$ day of December, 2002, by and between West Virginia University Board of Governors for and on behalf of West Virginia University (hereinafter "University") and ~~Richard Rodriguez~~ (hereinafter "Coach").

**WHEREAS**, University requires the services of a head coach for its football team; and

**WHEREAS**, Coach is willing to serve as University's head football coach under the following terms and conditions;

**NOW, THEREFORE, WITNESSETH,** that for and in consideration of the mutual covenants and conditions herein contained, and other good and valuable consideration, the receipt and sufficiency of all of which hereby is acknowledged by the parties hereto, University and Coach agree as follows:

## I.    EMPLOYMENT

Subject to the terms and conditions contained herein, University hereby employs Coach as University's Head Football Coach and Coach hereby agrees to and does accept the terms and conditions for said employment outlined herein.

## II.    TERM

The term of this Agreement shall be for a term of seven (7) years beginning on the 1st day of January, 2003, and terminating at 11:59 p.m. on the 15th day of January, 2010 ("the

1

**EXHIBIT**

"A"

Termination Date"). The one-year period beginning January 16 each year shall be deemed to be an "Agreement Year" as that term is used in this Agreement.

## III.    COMPENSATION AND BENEFITS

A.    **Base Salary**.  In consideration of services and satisfactory performance of the terms and conditions of this Agreement by Coach, University agrees to pay Coach an annual base salary of One Hundred Fifty Thousand Dollars ($150,000.00) per Agreement Year, payable in semi-monthly installments.  Payment of all salary shall be in accordance with the payroll policies of University and subject to such deductions as may be required by applicable state and federal laws and regulations, and such employee benefit plans in which Coach elects to participate.  Under no circumstances, however, shall the base salary ever be decreased during the term of this Agreement.

B.    **Employee Benefits**.  Coach will be eligible to participate in all employee benefit programs available to other University administrative employees.  Such benefits shall be governed by University policies and the laws of the State of West Virginia and will include, among others, health insurance, retirement, vacation, sick leave and all other standard benefits.

C.    **Other Benefits, Compensation and Incentives**

1.    **Courtesy Automobiles**: Coach shall receive two (2) courtesy automobiles via the Wheels Club program.

2.    **Tickets**:  During each Agreement Year, Coach shall be provided twenty (20) tickets for each home football game, four (4) tickets for each home men's basketball game, and, if applicable, ten (10) tickets for each post-season bowl game in which University's football team participates, to be distributed by Coach as allowed by law and by the rules and regulations of the Big East Conference and

2

the NCAA.

3. **Camps:** Coach shall operate at least one football youth camp and/or clinic on campus as part of the Department of Intercollegiate Athletics' operations and shall be entitled to the net profits therefrom after the payment of expenses associated with the camp, including room and board, personnel, standard University overhead charges and other costs associated with the camp(s) and/or clinic(s). The dates for each camp(s) and/or clinic(s) must be mutually agreed upon by Coach and University in order to avoid conflicts with other events and to ensure adequate facilities and residence hall occupancy space. Coach and all other WVU employees will be required to use vacation time while working camps. Solely in connection with such camps, Coach shall have permission to use the terms "West Virginia University", "West Virginia Football", "Mountaineer Football" and associated logos, trademarks and designs (collectively, "WVU logos"), upon the prior approval of University, such approval not to be unreasonably withheld; provided, however, that said permission shall not include permission to sell, manufacture or distribute, or contract for the sale, manufacture, or distribution of WVU logo merchandise, or otherwise to sublicense WVU logos, without the prior written permission of the University Director of Intercollegiate Athletics and the University Manager of the Trademark Licensing Programs, which permission shall be granted or denied in their sole discretion.

4. **Supplemental Compensation:** University will guarantee Coach the sum of Five Hundred and Fifty Thousand Dollars ($550,000.00) for the first Agreement Year, increasing in each subsequent Agreement Year by Fifty

3

Thousand Dollars ($50,000.00) per year, as supplemental compensation during the term of this Agreement for promotional activities, payable in semi-monthly installments. Under no circumstances shall the amount of the supplemental compensation be decreased during the term of this Agreement. Such promotional activities shall include:

a.    A minimum of fourteen (14) appearances per Agreement Year at events sponsored by the Mountaineer Athletic Club or WVU affiliated organizations and sponsors;

b.    Appearances and participation in radio, television and Internet programs produced by the University's Mountaineer Sports Network or its affiliated organizations. Such appearances and participation shall include, but not be limited to, weekly radio talk shows, pregame/postgame radio shows, weekly television shows, regular Internet audio programs and occasional Internet columns. University retains exclusive rights to Coach's services in these areas.

c.    Participation in endorsement opportunities arranged for by University. Such opportunities include, but are not limited to, athletic footwear, apparel, sideline gear, equipment, uniforms and media/promotional roles for businesses or organizations. University will exclusively negotiate and structure all endorsement opportunities. In addition to the athletic footwear, apparel and equipment deals, five (5) other endorsement/promotional opportunities are anticipated at any given time. University will obtain approval from Coach prior to committing

Coach to any such endorsement or promotional agreement involving Coach or the use of Coach's image, which approval will not be unreasonably withheld. University retains exclusive rights to Coach's services in these areas. Coach is, and will remain, the sole and exclusive owner of his name and likeness and all proprietary and potentially proprietary rights therein. Coach hereby grants University permission to use his name and likeness during the term of this Agreement, which permission will terminate or expire when Coach's employment with University ends, except for historical and archival uses in records and publications related to Coach's tenure and performance at University.

  d.   Participation in promotional and other activities as may be reasonably requested by University.

With respect to subsections a, c and d above, University agrees to consult with Coach and obtain his consent before scheduling such promotional activities, which consent shall not be unreasonably withheld. Except as limited or restricted by the provisions of this Article III(C)(4) and Article VII, and further subject to Coach's obligation to satisfy the terms and conditions of this Agreement, nothing contained herein shall be deemed to prevent Coach from arranging or participating in, and deriving personal income from, personal speaking engagements or other endeavors unrelated to his service as Head Football Coach, subject to prior approval of University, such approval not to be unreasonably withheld.

5.   **Incentives:** University shall cause to be paid to Coach, from appropriate

sources, annual incentives within One Hundred Twenty (120) days of the end of the season in which earned, for attainment of the following:

a.  (i) 30,000 season tickets sold (including employee and mini-packages),                $ 10,000.00

    or

    (ii) 35,000 season tickets sold (including employee and mini-packages)                 $ 20,000.00

    or

    (iii) 40,000 season tickets sold (including employee and mini-packages)                $ 30,000.00

b.  Satisfactory evaluation of football team's student academic achievement              $ 10,000.00

c.  Big East regular season title (or share of title)                                    $ 75,000.00

d.  (i) Non-BCS Bowl appearance                                                          $ 25,000.00

    or

    (ii) Bowl Championship Series appearance                                            $ 75,000.00

e.  National championship                                                                $ 150,000.00

f.  (i) Final Top 25 ranking in ESPN/USA Today or AP polls                               $ 15,000.00

    or

    (ii) Final Top 10 ranking in ESPN/USA Today or AP polls                            $ 25,000.00

g. Team GPA of 2.65 or better for combined

fall and spring semesters combined     $ 10,000.00

h. For each class of recruits signed by Coach,

if 60% or more of such recruits fulfill their

eligibility and graduate from WVU within

five years     $ 10,000.00

i. Big East Conference coach of the year     $ 10,000.00

j. National coach of the year     $ 20,000.00

6. **Club Memberships:** The University shall provide a membership for

Coach and his family at a local country club.

## IV. PERFORMANCE

In the performance of his duties, Coach shall be responsible to and under the direct

supervision of the Director of Intercollegiate Athletics. Without limiting the foregoing, Coach,

in the performance of his duties, shall conduct himself at all times in a manner which is

consistent with his position as an instructor of students and which presents a positive

representation of West Virginia University. The parties agree that, although this Agreement is

sports related, the primary purpose of the University and this Agreement is to support the

University's educational mission. The educational purposes of the University shall have priority

in the various provisions of this Agreement. Coach will follow all applicable University policies

and procedures and perform his duties as assigned by the Director of Intercollegiate Athletics

and will otherwise perform the requirements of the job description for the position of Head

Football Coach (to the extent not inconsistent with the terms of this Agreement) attached as

Exhibit 1 hereto and incorporated herein by reference. Coach shall not breach any local, state or

federal laws, ordinances, rules or regulations, or any of the written rules, regulations, policies, procedures or standards of University, the Big East Conference (or any other athletic conference of which University may become a member) or the NCAA, or allow or condone, directly or by negligent supervision, any such breach by any player or coach subject to his control or supervision. Such a breach by Coach, or Coach's allowing or condoning, directly or by negligent supervision, such a breach by a player or coach subject to his control or supervision, where such breach places the University or football program in a bad light or otherwise affects the operations of the football program or Coach's responsibilities under this Agreement, may result in disciplinary action and penalties ranging from termination (subject to the provisions of Article V(A), below), to public or private reprimand, as determined by the University President, consistent with the terms of this Agreement following consultation and review with the Director of Intercollegiate Athletics. Further, it is understood and agreed between the parties that University shall not reassign or transfer Coach to any position other than Head Football Coach during the term of this Agreement.

## V.    TERMINATION

A.    **For Cause by University.** The University specifically reserves the right to terminate this Agreement without further obligation at any time for cause, which shall be deemed to include the following:

1. The commission by Coach of a serious or major violation, whether intentional or negligent, or a pattern of violations, of the written rules, regulations, policies, procedures or standards of the NCAA, the University or the Big East Conference (or any other athletic conference of which University may become a member), or the allowing or condoning, whether directly or by negligent supervision, of any such violation by a

8

player or coach subject to his control or supervision;

2. Conviction (including a plea of no contest) of Coach of a felony or a crime involving moral turpitude;

3. Material and substantial breach of any term of this Agreement by Coach, which breach has gone uncured for thirty (30) days after written notice thereof by University to Coach; or

4. Willful or intentional disregard by Coach of the reasonable instructions of the Director of Intercollegiate Athletics or the President of University, which disregard has gone uncured for thirty (30) days after written notice thereof by University to Coach.

In the event that Coach is terminated pursuant to this section, Coach shall not be entitled to, nor shall University be required to pay, any portion of the compensation, benefits and/or incentives as set forth in Section III of this Agreement, except base salary, supplemental and incentive compensation actually earned, accrued but unpaid through the date of termination, all of which shall be paid within thirty (30) days of termination.

B. **Death, Disability or Permanent Retirement.** Except as stated in Article V(D)(3), in the event of the inability of Coach to continue to perform the essential functions of his position under this Agreement by reason of death, disability or permanent retirement, this Agreement shall thereupon terminate and all future obligations between the parties hereto shall cease. The parties further agree that in the event that Coach is unable to continue to perform his obligations under this Agreement and the Agreement is terminated pursuant to this Article V(B), Coach shall be entitled to all earned and accrued base salary and all supplemental and incentive compensation earned but unpaid as of the date of death, final determination of disability or permanent retirement. Such compensation shall be paid to Coach or his estate or beneficiaries,

9

as the case may be, and shall be in addition to standard University benefits, if any.

      **C.**   <u>Termination Without Cause by University</u>. In addition to the provisions set forth above, there also is reserved to University the right to terminate this Agreement without cause at any time. In the event that University terminates Coach without cause, University will pay Coach (1) all base salary, supplemental compensation and incentive compensation earned as of the date of termination, and (2) Two Million Dollars ($2,000,000.00), which sum shall be deemed to be liquidated damages and extinguish all rights of Coach to any further payments from University. All benefits and entitlements of Coach hereunder will terminate as of the date of termination by University without cause. Coach shall have no duty to mitigate, nor shall University have any right of offset.

      **D.**   <u>Termination by Coach</u>. (1) In the event that Coach terminates this Agreement because of material and substantial breach by University, which breach has gone uncured for thirty (30) days after written notice thereof by Coach to University, University will pay Coach (1) all base salary, supplemental compensation and incentive compensation earned as of the date of termination, and (2) Two Million Dollars ($2,000,000.00), which sum shall be deemed to be liquidated damages and extinguish all rights of Coach to further payments from University. Coach shall have no duty to mitigate, nor shall University have any right of offset.

      (2)   Except as provided in Article V(B), if Coach terminates the agreement for any reason without breach of the Agreement by University, in addition to all other forfeitures and penalties provided herein, Coach will pay University as liquidated damages Two Million Dollars ($2,000,000.00).

      (3)   In the event of an asserted permanent retirement by Coach, and in the further event that Coach resumes any coaching responsibilities with any other institution of higher

education within three (3) years of his asserted retirement, Coach shall be obligated to pay University Two Million Dollars ($2,000,000.00), which sum shall be deemed to be liquidated damages.

E.    **Covenant Not To Compete**.  Coach acknowledges that, during the term of employment by University, he will gain confidential information concerning University's athletic program and that the use of this confidential information by an opponent in the same conference as University would place University's athletic program at a serious competitive disadvantage.  Accordingly, Coach expressly promises and agrees not to engage in employment with another Big East Conference school, or any other Conference in which University is a member, in any coaching capacity prior to the Termination Date.  Coach further agrees that, because his services under this Agreement are of a special, unique, unusual, extraordinary and intellectual character which gives those services peculiar value, the loss to University of which cannot be reasonably or adequately compensated in damages in an action of law, and because said breach would place University at significant competitive disadvantage, University shall have the right to obtain from any court such equitable, injunctive, or other relief as may be appropriate, including a decree enjoining Coach from performing coaching-related services for any school in a Conference in which University is a member prior to the Termination Date.

## VI. OUTSIDE INCOME

Coach shall receive written approval from University Director of Intercollegiate Athletics or his designee prior to entering into any agreement for income and benefits from sources outside University, such approval not to be unreasonably withheld. Coach shall annually report in writing all income and benefits from sources outside University to the Director of Intercollegiate Athletics or his designee.

## VII. PUBLIC APPEARANCES

Coach shall make no public appearance, either in person or by means of radio, television, Internet or other means or medium, or willingly allow the use of his name in connection with his relationship to the University, when any such appearance or use of name will result in unfavorable reflection upon University or conflict with Coach's duties or University's rights under this Agreement.

## VIII. REPRESENTATIONS

Coach represents and warrants that he has not violated any of the rules and regulations of the NCAA, and he is not aware of any threatened or pending NCAA investigation involving his conduct at any other NCAA member institution.

## IX. PUBLICITY

Neither Coach nor any agent or representative of Coach shall make any public statement at any time bearing on the negotiation or award of this Agreement to the media or any other person or entity without the prior approval of the Director of Intercollegiate Athletics. Coach shall cooperate with all reasonable requests by the Director of Intercollegiate Athletics for assistance with publicity regarding the Agreement.

## X.   ENTIRE AGREEMENT; AMENDMENT

It is mutually understood that this Agreement contains all of the terms and conditions to which the parties have agreed and that no other understandings or representations, either oral or written, unless referenced in the preceding paragraphs, regarding the subject matter of this Agreement shall be deemed to exist or to bind the parties hereto.  Any modification, amendment or addendum to this Agreement shall be effective only if made in writing and signed by both parties.

## XI.   SEVERABILITY

If any provision of this Agreement is held invalid or otherwise unenforceable, the enforceability of the remaining provisions shall not be impaired thereby, and such remaining provisions shall remain in full force and effect.

## XII.   APPLICABLE LAW

This Agreement is made and entered in Monongalia County in the State of West Virginia and the laws of West Virginia shall govern its validity and interpretation and the performance by the parties of their respective duties and obligations hereunder.

## XIII.   LEGAL COUNSEL

This Agreement is the result of arm's-length negotiation between the parties and their respective counsel, and each party has been represented by counsel of their own choosing, and had the full benefit of such counsel throughout the negotiation of the terms hereof and the drafting and execution of this document. Each party enters into this Agreement freely and voluntarily and with the full intent to be bound hereby.

## XIV. NOTICE

Any and all notices required or permitted to be given under this Agreement will be sufficient if furnished in writing and sent by registered or certified mail to the other party at such party's last known address. Any notice to University shall be copied to University's General Counsel and any notice to Coach shall be copied to Richard Davis, Cameron, Davis & Gonzalez, One Clearlake Centre, Suite 1601, 250 Australian Avenue South, West Palm Beach, Florida, 33401.

IN WITNESS WHEREOF, the parties hereto shall consider this Agreement to be effective on the 21th day of December, 2002.

WEST VIRGINIA UNIVERSITY BOARD
OF GOVERNORS FOR AND ON BEHALF
OF WEST VIRGINIA UNIVERSITY:

DAVID C. HARDESTY, JR., President

By _Ed Pastilong_
ED PASTILONG, Director of
Intercollegiate Athletics

By: _Rich Rod_
Richard Rodriguez

14

## First Amendment to the Employment Agreement for Richard Rodriguez

This First Amendment to the Employment Agreement (this "First Amendment") is made by and between West Virginia University Board of Governors for and on behalf of West Virginia University ("University") and Richard Rodriguez ("Coach") as of this 20th day of June, 2006.

<u>Recitals</u>   *sb* 24 *RAA*

A.  University and Coach entered into an Employment Agreement effective December 21, 2002 (the "Agreement").

B.  University and Coach now desire to amend the Agreement by modifying the following Sections thereof.

In consideration of the mutual covenants and conditions contained herein University and Coach agree that, effective March 1, 2006, the Agreement is amended as follows:

1.  The first sentence of Section II, under the heading <u>Term</u>, is hereby deleted and the following substituted therefor:

    This Agreement shall be for a term beginning effective July 1, 2006 and ending at 11:59 p.m. on the 15th day of January, 2013 ("the Termination Date").

2.  The first sentence of Section III.C.4, under the heading <u>Supplemental Compensation</u>, is hereby deleted and the following substituted therefor:

    For the period from July 1, 2006 through January 15, 2007, University will guarantee Coach the sum of Five Hundred Ten Thousand, Four Hundred Sixteen Dollars and Sixty-Seven Cents ($510,416.67) as supplemental compensation during said period for promotional activities, payable in equal semi-monthly installments on the fifteenth and the last day of each calendar month. University will guarantee Coach the sum of Nine Hundred Thousand Dollars ($900,000.00) for the Agreement Year beginning January 16, 2007, increasing in each subsequent Agreement Year by Fifty Thousand Dollars ($50,000.00) per year, as supplemental compensation during the term of this Agreement for promotional activities, payable in equal semi-monthly installments on the fifteenth and the last day of each calendar month.

3.  A new Section III.C.7 is hereby inserted, as follows:

    <u>Deferred Compensation</u>. For each regular football season in which Coach serves as head football coach of the University's football team, beginning with the 2006 football season and ending with the 2011 football season, Coach shall receive $100,000.00, payable in a single, lump-sum payment, less applicable payroll tax withholdings, on December 5, 2011; provided, however, that Coach shall forfeit all entitlement to said payment if Coach ceases to be employed as head football

EXHIBIT

"B"

coach of the University's football team prior to December 5, 2011 for any reason other than termination without cause by University, as set forth in Section V.C. The benefit provided pursuant to this Section III.C.7 (i) is intended to be unfunded for tax purposes, (ii) is not provided pursuant to an eligible plan within the meaning of Section 457 of the Internal Revenue Code of 1986, as amended (the "Code"), (iii) is intended to be subject to a substantial risk of forfeiture in accordance with Section 457(f) of the Code, and (iv) shall be open to good-faith revision by the parties to the extent reasonably necessary in the event that changes in the Code, applicable regulations or Internal Revenue Service guidance affect the tax consequences of the plan in a manner which materially impacts the intentions of the parties. Notwithstanding the foregoing, University neither guarantees, warrants, nor makes any representations concerning the tax treatment of any payments made pursuant to this Section III.C.7.

4.  Section V.C., under the subheading <u>Termination Without Cause by University,</u> is hereby deleted and the following substituted therefor:

> <u>Termination Without Cause by University.</u> In addition to the provisions set forth above, there also is reserved to University the right to terminate this Agreement without cause at any time. In the event that University terminates Coach without cause, University will pay Coach: 1) all base salary, supplemental compensation and incentive compensation earned as of the date of termination; and 2) the further sum of Two Million Dollars ($2,000,000.00) if termination occurs on or before August 31, 2007, or One Million Five Hundred Thousand Dollars ($1,500,000.00) if termination occurs after August 31, 2007 and on or before August 31, 2008, or One Million Dollars ($1,000,000.00) if termination occurs after August 31, 2008 and on or before January 15, 2013. This sum shall be deemed to be liquidated damages and extinguish all rights of Coach to any further compensation from University, except as set forth in Section III.C.7. All sums required to be paid by University to Coach under this paragraph shall be payable within two years of termination of Coach by University without cause, according to the following schedule: one-third due 30 days after termination; one-third due one year after termination; and one-third due two years after termination. Except as specifically set forth in this Agreement, all benefits and entitlements of Coach hereunder will terminate as of the date of termination by University without cause. Coach shall have no duty to mitigate, nor shall University have any right of offset.

*(handwritten margin notes: RAN [incentive] compensation SB)*

5.  Section V.D., under the subheading <u>Termination by Coach,</u> is hereby deleted and the following substituted therefor:

> <u>Termination by Coach.</u>

> (1) In the event that Coach terminates this Agreement because of material and substantial breach by University, which breach has gone uncured for thirty (30) days after written notice thereof by Coach to University, University will

pay Coach: a) all base salary, supplemental compensation and incentive compensation earned as of the date of termination; and b) the further sum of Two Million Dollars ($2,000,000.00) if termination occurs on or before August 31, 2007, or One Million Five Hundred Thousand Dollars ($1,500,000.00) if termination occurs after August 31, 2007 and on or before August 31, 2008, or One Million Dollars ($1,000,000.00) if termination occurs after August 31, 2008 and on or before January 15, 2013. This sum shall be deemed to be liquidated damages and extinguish all rights of Coach to any further compensation from University, except as set forth in Section III.C.7. All sums required to be paid by University to Coach under this paragraph shall be payable within two years of Coach's termination of the Agreement because of material, substantial, and uncured breach as described above, according to the following schedule: one-third due 30 days after termination; one-third due one year after termination; and one-third due two years after termination. Except as specifically set forth in this Agreement, all benefits and entitlements of Coach hereunder will terminate as of the date of termination by University without cause. Coach shall have no duty to mitigate, nor shall University have any right of offset.

(2) Except as provided in Article V(B), if Coach terminates the agreement for any reason without breach of the Agreement by University, in addition to all other forfeitures and penalties provided herein, Coach/will pay University the sum of Two Million Dollars ($2,000,000.00) if termination occurs on or before August 31, 2007, or One Million Five Hundred Thousand Dollars ($1,500,000.00) if termination occurs after August 31, 2007 and on or before August 31, 2008, or One Million Dollars ($1,000,000.00) if termination occurs after August 31, 2008 and on or before January 15, 2013. This sum shall be deemed to be liquidated damages and extinguish all rights of University to any further payment from Coach. All sums required to be paid by Coach to University under this paragraph shall be payable within two years of termination by Coach without breach of the Agreement by University, according to the following schedule: one-third due 30 days after termination; one-third due one year after termination; and one-third due two years after termination.

(3) In the event of an asserted permanent retirement by Coach, and in the further event that Coach resumes any coaching responsibilities with any other institution of higher education within three (3) years of his asserted retirement, Coach shall be obligated to pay University the sum of Two Million Dollars ($2,000,000.00) if retirement occurred on or before August 31, 2007, or One Million Five Hundred Thousand Dollars ($1,500,000.00) if retirement occurred after August 31, 2007 and on or before August 31, 2008, or One Million Dollars ($1,000,000.00) if retirement occurred after August 31, 2008 and on or before January 15, 2013. All sums required to be paid by Coach to University under this paragraph shall be payable within two years of termination by Coach without breach of the Agreement by University,

according to the following schedule: one-third due 30 days after termination; one-third due one year after termination; and one-third due two years after termination. This sum shall be deemed to be liquidated damages and extinguish all rights of University to any further payment from Coach.

6.     Except as set forth in this First Amendment , the Agreement remains in full force and effect and unamended.

In witness whereof the parties hereto have set their hands and seals by their fully authorized representatives.

West Virginia University Board of Governors
On behalf of West Virginia University
David C. Hardesty, President


_____          _____
Ed Pastilong                                        Witness
Director of Athletics


Acknowledged by


_____
Richard Rodriguez

-4-

## Second Amendment to the Employment Agreement for Richard Rodriguez

This Second Amendment to the Employment Agreement (this "Second Amendment") is made by and between West Virginia University Board of Governors for and on behalf of West Virginia University ("University") and Richard Rodriguez ("Coach") as of this _24TH_ day of _AUGUST_ 2007.

WHEREAS, the University and Coach entered into an Employment Agreement effective December 21, 2002 (the "Agreement");

WHEREAS, the University and Coach entered into a First Amendment to the Employment Agreement effective June 24, 2006 (the "First Amendment");

WHEREAS, the University and Coach entered into a Term Sheet on December 8, 2006 providing for further modifications to the Agreement; and

WHEREAS, the University and Coach now desire to definitively amend the Agreement to reflect the terms of the Term Sheet and in certain other respects by entering into this Second Amendment.

NOW, THEREFORE, in consideration of the mutual covenants and conditions contained herein University and Coach agree that, effective December 8, 2006, except as specifically indicated herein, the Agreement is amended as follows:

1.      The first sentence of Article II, under the heading Term, is hereby deleted and the following substituted therefore:

This Agreement shall be for a term ("the Term") beginning effective December 8, 2006 and ending at 11:59 p.m. on the 15th day of January, 2014 ("the Termination Date").

2.      The first paragraph in Article III(C)(4), Supplemental Compensation, is hereby deleted and the following substituted therefore:

(4)     Supplemental Compensation.   In consideration of Coach's performance of certain promotional activities described in this Section, the University will pay Coach supplemental compensation in the base amount of Two Hundred Fifty Thousand Dollars ($250,000) for the Agreement Year commencing on January 16, 2007. This base supplemental compensation shall be increased by an amount equal to Fifty Thousand Dollars ($50,000) each Agreement Year after January 16, 2007.

(a)     The University further guarantees payment to Coach of additional supplemental compensation in the amount of

**EXHIBIT**

"C"

Three Hundred Thousand Five Hundred Dollars ($350,000) for each Agreement Year if and to the extent such amount is not earned and received directly by Coach through endorsement opportunities approved by the University. Any supplemental compensation guaranteed under this paragraph shall be payable to Coach as provided in paragraph (c), but in no event later than by the end of the Agreement Year.

(b) For each Bowl Championship Series (BCS) game appearance by the football team, University will increase Coach's supplemental compensation by an additional Fifty Thousand Dollars ($50,000.00) for each subsequent Agreement Year remaining in the Term.

(c) Supplemental compensation shall be payable in equal semi-monthly installments on the fifteenth (15th) and last day of each month during each Agreement Year.

(d) Under no circumstances shall the amount of the supplemental compensation be decreased during the Term.

(e) The promotional activities for which the Coach shall be responsible for shall include:

3. Article III(C)(4)(c) is hereby amended to increase the endorsement/promotional opportunities to ten from the five anticipated at any given time. There are no other amendments to that particular paragraph.

4. The first paragraph of Article III(C)(5), Incentives, is hereby deleted and the following substituted therefore:

(5) **Incentives.** University shall cause to be paid to Coach, from appropriate sources, annual incentives within sixty (60) days of the end of the season in which earned, but no later than two and one-half months (2 ½) after the end of the calendar year in which earned, for attainment of the following:

5. Article III(C)(7), Deferred Compensation, is hereby deleted and a new Article III(C)(7), Annual Retention Incentive, is hereby substituted therefore:

(7) Annual Retention Incentive. Starting with the Agreement Year beginning on January 16, 2007, for each Agreement Year in which Coach remains employed as head football coach of the University's football team on June 1 of that Agreement Year, Coach shall receive One Hundred Fifty Thousand Dollars ($150,000.00),

payable in a single, lump-sum payment, less all applicable payroll withholdings, as an incentive for remaining as head football coach. The first payment under this Section shall be paid, if earned, on June 1, 2007, and payments thereafter shall be paid, if earned, each subsequent June 1.

6.    Article V(B), <u>Death, Disability or Permanent Retirement</u>, is hereby deleted and the following substituted therefore:

(B)    <u>Death or Disability</u>. In the event of Coach's death during the Term or the inability of Coach to continue to perform the essential functions of his position under this Agreement by reason of disability during the Term, Coach's employment under this Agreement shall terminate and all future obligations under the Agreement between the parties hereto shall cease; provided, however, that Coach shall be entitled to all earned and accrued base salary, supplemental compensation, and incentive compensation earned under the terms of this Agreement and not paid as of the date of termination of employment, less all applicable payroll withholdings, within thirty (30) days after termination. Such compensation shall be paid to or on behalf of Coach or his estate or his beneficiaries as the case may be, and shall be in addition to standard University benefits, if any.

7.    Article V(C), <u>Termination Without Cause by University</u>, is hereby deleted and the following substituted therefore:

(C)    <u>Termination Without Cause by University</u>. In addition to the provisions set forth above, there also is reserved to University the right to terminate Coach's employment under this Agreement without cause at any time. In the event that University terminates Coach's employment without cause, University will pay to or on behalf of Coach:

(1)    All base salary, supplemental compensation, and incentive compensation earned under the terms of this Agreement and not paid as of the date of termination, less all applicable payroll withholdings, within thirty (30) days after termination; and

(2)    The further sum of (a) Four Million Dollars ($4,000,000.00) if termination occurs on or before August 31, 2008; or (b) Two Million Dollars ($2,000,000.00) if termination occurs after August 31, 2008 and on or before August 31, 2011; or (c) One Million Dollars ($1,000,000.00) if termination occurs after August 31, 2011

- 3 -

and on or before January 15, 2014. This sum shall be deemed to be liquidated damages and extinguish all rights of Coach to any further compensation from University, except as set forth in Article XV. All sums required to be paid by University to Coach under this Section shall be paid within thirty (30) days after termination, but no later than December 31 of the year of termination.

(3)     Except as specifically set forth in this Agreement, all benefits and entitlements of Coach hereunder will terminate as of the date of termination by University without cause. Coach shall have no duty to mitigate, nor shall University have any right of offset.

6.     Article V(D), <u>Termination by Coach</u>, is hereby deleted and the following substituted therefore:

(D)     <u>Termination by Coach</u>.

(1)     In the event that Coach terminates his employment under this Agreement because of material and substantial breach of the Agreement by University, if Coach has given written notice to the University within ninety (90) days of such breach and the breach has gone uncured for thirty (30) days after the University's receipt of such written notice, University will pay Coach:

(a)     All base salary, supplemental compensation, and incentive compensation earned under the terms of this Agreement and not paid as of the date of termination, less all applicable payroll withholdings, within thirty (30) days after termination; and

(b)     The further sum of (i) Four Million Dollars ($4,000,000.00) if termination occurs on or before August 31, 2008; or (iii) Two Million Dollars ($2,000,000.00) if termination occurs after August 31, 2008 and on or before August 31, 2011; or (iv) One Million Dollars ($1,000,000.00) if termination occurs after August 31, 2011 and on or before January 15, 2014. This sum shall be deemed to be liquidated damages and extinguish all rights of Coach to any further compensation from University, except as set forth in Article XV. All sums required to be paid by University to Coach under this Section

- 4 -

shall be paid within thirty (30) days after termination, but no later than December 31 of the year of termination.

(c)     Except as specifically set forth in this Agreement, all benefits and entitlements of Coach hereunder will terminate as of the date of termination by Coach for material and subsequent breach of the Agreement by the University. Coach shall have no duty to mitigate, nor shall University have any right of offset.

(2)     Except as provided in Article V(B), if Coach terminates his employment under this Agreement for any reason other than as set forth under Article V(D)(1):

(a)     The University will pay Coach all base salary, supplemental compensation, and incentive compensation earned under the terms of this Agreement and not paid as of the date of termination, less all applicable payroll withholdings, within thirty (30) days after termination; and

(b)     Unless Coach terminates his employment under this Agreement due to a permanent retirement from the University and all other employment with any coaching responsibility with an institution of higher education, in addition to all other forfeitures and penalties provided herein, Coach will pay University the sum of (a) Four Million Dollars ($4,000,000.00), payable in a single lump sum within thirty (30) days of termination, if termination occurs on or before August 31, 2007; or (b) Four Million Dollars ($4,000,000.00), payable, as further described below, within two years of termination if termination occurs after August 31, 2007 and on or before August 31, 2008; or (c) Two Million Dollars ($2,000,000.00), payable within two years of termination, if termination occurs after August 31, 2008 and on or before August 31, 2011; or (d) One Million Dollars ($1,000,000.00), payable in a single lump sum within thirty (30) days of termination, if termination occurs after August 31, 2011 and on or before January 15, 2014. This sum shall be deemed to be liquidated damages and extinguish all rights of

- 5 -

University to any further payment from Coach. All sums required to be paid by Coach to the University under this Section within two years shall be payable according to the following schedule: one-third due (30) days after termination; one-third due on the one year anniversary of termination; and one-third due on the second anniversary of termination.

(3) In the event of an asserted permanent retirement by Coach under the preceding paragraphs of this Section, and in the further event that Coach resumes any coaching responsibilities with any other institution of higher education within three (3) years of his asserted permanent retirement, Coach shall be obligated to pay University the sum of (a) Four Million Dollars ($4,000,000.00), payable in a single lump sum within thirty (30) days of resumption of coaching responsibilities, if the asserted permanent retirement occurs on or before August 31, 2007; or (b) Four Million Dollars ($4,000,000.00), payable, as further described below, within two years of resumption of coaching responsibilities if the asserted permanent retirement occurs after August 31, 2007 and on or before August 31, 2008; or (c) Two Million Dollars ($2,000,000.00), within two years of termination, if termination occurs after August 31, 2008 and on or before August 31, 2011; or (d) One Million Dollars ($1,000,000.00), payable in a single lump sum within thirty (30) days of resumption of coaching responsibilities, if the asserted permanent retirement occurs after August 31, 2011 and on or before January 15, 2014. This sum shall be deemed to be liquidated damages and extinguish all rights of University to any further payment from Coach. All sums required to be paid by Coach to the University under this Section within two years shall be payable according to the following schedule: one-third due thirty (30) days after termination; one-third due on the one year anniversary of termination; and one-third due on the second anniversary of termination.

7. A new Article XV, Special Retirement Plans, is hereby inserted as follows:

XV. SPECIAL RETIREMENT PLANS

(A) Governmental Plans. The University shall sponsor and maintain for Coach's benefit a (i) defined benefit pension plan ("the Pension Plan") and (ii) defined contribution plan ("the DC Plan"). The

Pension Plan shall be intended to meet the requirements of Section 401(a) of the Internal Revenue Code of 1986, as amended (the "Code") and the DC Plan shall be intended to meet the requirements of either Section 401(a) or 403(b) of the Code, and each plan shall be a "governmental plan" within the meaning of Section 414(d) of the Code (together, the Pension Plan and DC Plan are referred to as the "Governmental Plans"). The Governmental Plans shall be designed, established, and administered in a manner consistent with the provisions of this Article, and funded by a trust or the purchase of insurance and/or annuity contracts to which University contributions shall be allocated as further provided herein.

(B)     Excess Benefit Plan. The University shall additionally sponsor and maintain for Coach's benefit a "qualified governmental excess benefit arrangement" described in Section 415(m)(3) of the Code, to which shall be paid that part of the Coach's benefit payable under the DC Plan that exceeds the limit of Code Section 415(c). The Excess Benefit Plan shall be designed, established, and administered in a manner consistent with the provisions of this Article, and funded by a trust, the assets of which shall be subject to the University's general creditors until distributed, to which University contributions shall be allocated as further provided herein.

(C)     Establishment of Plans; Plan Documents.

(1)     The University shall establish the Governmental Plans and the Excess Benefit Plan (referred to collectively as "the Plans") effective as of January 1, 2007 through the formal adoption of Plan and trust documents (referred to as the "Plan Documents") as soon as practicable (and in no event later than December 31, 2007). The Plan Documents shall reflect the plan design described in Section (D) hereof and shall otherwise be consistent with applicable law and regulations.

(2)     As soon as practicable after establishment of the Plans, the University shall apply for favorable letters of determination from the Internal Revenue Service ("IRS") with respect to the Governmental Plans' initial qualification under Section 401(a) of the Code, and for a favorable private letter ruling from the IRS to confirm that the Excess Benefit Plan meets the requirements of Section 415(m)(3) of the Code and, if applicable, that the DC Plan meets the requirements of Section 403(b) of the Code.

(3)    In the event that the IRS does not approve one or more of the Plans such that contributions are returned to the University and/or the University concludes that funding at the levels provided for under Article XV.E is not possible based upon a determination by the IRS, the parties agree to reopen this Article XV of the Agreement within sixty (60) days of such IRS determination to provide for an alternative compensation arrangement for the Coach; provided, however, that in no event shall the University's financial commitment under such alternative arrangement be greater or less than that set forth under Article XV.E.

(D)    Design of the Plans.

(1)    Plan Year; Limitation Year. The Governmental Plans and Excess Benefit Plan shall be administered by the University on the basis of a plan year comprised of the twelve (12) month period ending December 31. The Governmental Plans' "limitation year" within the meaning of Section 415 of the Code shall be the calendar year ending within the plan year.

(2)    Pension Plan. The Pension Plan shall be designed, to the extent possible, to provide Coach with the maximum annual benefit that can be accrued under Section 415(b) of the Code. The normal retirement age under the Plan shall be fifty-five (55). The Pension Plan shall include an optional lump sum form of benefit for Coach (or his designated beneficiary in the event of his death).

(3)    DC Plan and Excess Benefit Plan. The DC Plan and Excess Benefit Plan shall allow for Coach (or his designated beneficiary in the event of his death) to elect payment of his vested benefits in the form of a lump sum distribution, periodic or non-periodic installments, through the purchase of an annuity, or a combination of one or more of the foregoing.

(4)    Vesting of Coach's Benefits under the Governmental Plans. Coach shall at all times have a fully vested interest in benefits and contributions that he accrues under the Governmental Plans and Excess Benefit Plan.

(5)    Plan Investments. Coach, directly or through his financial advisor as designated by Coach in writing, may recommend a trustee and/or annuity provider for the Governmental

Plans and the Excess Benefit Plan, which the University agrees to give full consideration, but the University shall have the ultimate authority to select and appoint the trustee and/or annuity provider of the Governmental Plans and the Excess Benefit Plan of its choice. Coach shall have the discretion to direct the investment of his accounts under the DC Plan and the Excess Benefit Plan.

(E) Funding. The University will make contributions to the Governmental Plans and the Excess Benefit Plan in the amounts set forth in this Section which shall be allocated between the Plans as provided in Section (F).

(1) Amount of Contributions. The University's contributions for each plan year ending within the Term shall be the sum of the "fixed contribution" and "contingent contribution" (if any) determined in accordance with the following schedule: [Initial fixed contribution is $550,000 less amount already paid to Coach prior to September 1, 2007, plus $100,000]

| Plan Year Ending | Fixed Contribution | Contingent Contribution |
|---|---|---|
| December 31, 2007 | $550,000.00 | |
| December 31, 2008 | $550,000.00 | |
| December 31, 2009 | $550,000.00 | $1,099,999.00 |
| December 31, 2010 | $550,000.00 | |
| December 31, 2011 | $550,000.00 | $666,666.00 |
| December 31, 2012 | $550,000.00 | |
| December 31, 2013 | $550,000.00 | $666,666.00 |

(2) Terms and Conditions of Fixed Contributions. If Coach is not employed as the University's Head Football Coach as of the last day of the Agreement Year that begins in a plan year, the fixed contribution shall be the fixed contribution amount set forth in paragraph (1) above for the plan year, multiplied by a ratio the numerator of which is the number of days Coach was employed as University's Head Football Coach that Agreement Year, and the denominator of which is 365; provided, however, that for the plan year ending December 31, 2007, the ratio numerator shall be the number of days Coach was employed as University's Head Football Coach from September 1, 2007 through January 15, 2008, and the ratio denominator shall be 137.

(3) Terms and Conditions of Contingent Contributions:

(a) First Contingent Contribution. The "contingent contribution" for the plan year ending December 31, 2009 shall be made only if Coach remains employed as the University's Head Football Coach as of December 5, 2009; provided, however, that if Coach terminates employment earlier than December 5, 2009 due to: (i) the University's termination of his employment without cause under Article V(C) of this Agreement, (ii) Coach's termination of the Agreement pursuant to Article V(D)(1) hereof, or (iii) Coach's death or termination due to disability pursuant to Article V(B), then the contingent contribution shall be made for the plan year in which the Coach terminates employment.

(b) Second Contingent Contribution. The "contingent contribution" for the plan year ending December 31, 2011 shall be made only if Coach remains employed as the University's Head Football Coach as of December 5, 2011; provided, however, that if Coach terminates employment earlier than December 5, 2011 due to: (i) the University's prior termination of his employment without cause under Article V(C) of this Agreement, (ii) Coach's prior termination of the Agreement pursuant to Article V(D)(1) hereof, or (iii) Coach's death or termination due to disability pursuant to Article V(B), then the contingent contribution shall be made for the plan year in which the Coach terminates employment.

(c) Third Contingent Contribution. The "contingent contribution" for the plan year ending December 31, 2013 shall be made only if Coach remains employed as the University's Head Football Coach as of December 5, 2013; provided, however, that if Coach terminates employment earlier than December 5, 2013 due to: (i) the University's prior termination of his employment without cause under Article V(C) of this Agreement, (ii) Coach's prior termination of the Agreement pursuant to Article V(D)(1) hereof, or (iii) Coach's death or termination due to disability pursuant to Article V(B), then the contingent contribution shall be made for the plan year in which the Coach terminates employment.

(F) <u>Allocation of University's Contributions.</u>  The University's fixed contributions and contingent contributions, if any, for a plan year shall be allocated between the Plans as follows:

    (1) <u>Pension Plan</u>:  first, to the Pension Plan, the amount determined necessary to fund the accrued benefit payable under the Pension Plan in order to protect the University from any funding shortfall in the event of Coach's early termination, as determined by an "enrolled actuary" (within the meaning of Section 7701(a)(35) of the Code); and

    (2) <u>DC Plan</u>:  next to the DC Plan, an amount representing the maximum annual addition for the limitation year under Section 415(c) of the Code (taking into account amounts, if any, allocated for Coach's benefit under any other defined contribution plan maintained by the University which are treated as annual additions for purposes of applying Section 415(c) of the Code); and

    (3) <u>Excess Benefit Plan</u>:  finally, the remaining amount of such contributions, to the Excess Benefit Plan.

(G) The University's contributions to the Governmental Plans and Excess Benefit Plan for a plan year shall be made as soon as practicable after the close of each plan year end and, in no event, later than the date prescribed by law.

(H) The reasonable annual costs of administering the Governmental Plans and Excess Benefit Plan by the University on behalf of the Coach shall be paid by the Plans to the extent permitted by applicable law.

8.  Article XIII, <u>Legal Counsel</u> is hereby renamed <u>Legal and Tax Counsel</u>.  The text thereunder is hereby deleted and the following substituted therefore:

## XIII.  LEGAL AND TAX COUNSEL

This Agreement is the result of arms length negotiation between the parties and their respective legal counsel and tax advisors.  Each party has been represented by such counsel and advisors of their own choosing and had the full benefit of such counsel throughout the negotiation of the terms hereof and the drafting and execution of this document.  The University makes no representations, warranties, or guaranties as to the tax affect of the compensation and retirement plans contained herein.  Each party enters into this Agreement freely and voluntarily and with the full intent to be bound thereby.

9.   Article XIV is hereby amended to provide that any notice to Coach required or permitted under this Agreement will be sent to Coach and copied to Michael L. Brown, c/o Lock Metz Malinovic, 6900 Camelback Road, Suite 600, Scottsdale, Arizona 85251. There are no other amendments to that particular paragraph.

10.   A new Article XVI, Assistant Coaches' Salary Pool, is hereby inserted as follows:

### XVI.   ASSISTANT COACHES' SALARY POOL

The University shall make a one-time supplemental payment of One Hundred Thousand Dollars ($100,000) to the assistant coaches' salary pool by or before July 1, 2007. In addition, from July 21, 2006 through to the end of the term of this Agreement, the University shall make an annual Fifty Thousand Dollars ($50,000) payment to the assistant coaches' salary pool.

11.   A new Article XVII, Puskar Center Renovations, is hereby inserted at follows:

### XVII.  PUSKAR CENTER RENOVATIONS

The Department of Intercollegiate Athletics hereby commits to the construction of and renovations to certain facilities as follows: (1) Solicitation of private financial contributions for the academic center in the amount of Two Million Two Hundred Thousand Dollars ($2,200,000) by December 2006 with construction to commence by the first quarter of 2007; and (2) Solicitation of private financial contributions for the locker room in the amount of Four Million Dollars ($4,000,000) by December 2007 with construction to commence by the first quarter of 2008.

12.   A new Article XIX, Tax Code Compliance, is hereby inserted, as follows:

### XVIII. TAX CODE COMPLIANCE

(A)   Effective January 1, 2005, this Agreement, as amended by the First Amendment and this Second Amendment, is intended to be in good faith compliance with Section 409A of the Code and the regulations thereunder.

(B)   Effective January 1, 2005, for purposes of Article V under this Agreement, termination of employment shall have the meaning set forth in the regulations under Section 409A of the Code.

(C)   Effective January 1, 2005, any amounts payable under Article V(C) and Article V(D) of this Agreement are payable only upon termination of the Coach's employment under the Agreement, and shall be paid within thirty (30) days after such termination. This Section (C) is superceded as of June 24, 2006 by the First Amendment to the Employment Agreement.

1.3.   Except as set forth in this Second Amendment, the Agreement remains in full force and effect and unamended.

IN WITNESS WHEREOF the parties hereto have set their hands and seals by their fully authorized representatives.

West Virginia University Board of Governors
On behalf of West Virginia University
David C. Hardesty, President

_____          _____
Ed Pastilong                                      Witness
Director of Athletics

Acknowledged by

_____          _____
Richard Rodriguez

December 18, 2007

Mr. Ed Pastilong
Athletic Director
West Virginia University

Mr. Pastilong:

I am informing you ~~I am revising~~ (RMR) my resignation date as Head Football Coach at West
Virginia University effective 12:00 a.m. December 19, 2007.

Rich Rodriguez

CC;    Joyce Bucklew

**EXHIBIT**

"D"