IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG DIVISION

**WEST VIRGINIA UNIVERSITY**
**BOARD OF GOVERNORS for and on**
**behalf of WEST VIRGINIA UNIVERSITY,**

      **Plaintiff,**

**v.**     Civil Action No.: 1:08-CV-00041
     (Honorable Irene M. Keeley)

**RICHARD RODRIGUEZ,**

      **Defendant.**

**AMENDED COMPLAINT FOR DECLARATORY JUDGMENT,**
**BREACH OF CONTRACT AND OTHER RELIEF**

COMES NOW the plaintiff, West Virginia University Board of Governors for and on behalf of West Virginia University, by counsel, and alleges by way of Amended Complaint for Declaratory Judgment, Breach of Contract and Other Relief the following against the defendant, Richard Rodriguez ["Rodriguez"]:

**PARTIES**

1.     The West Virginia University Board of Governors [the "University"], created by the legislature of West Virginia pursuant to W.Va. Code § 18B-2A-1 *et seq.*, is the governing body with the mission of general supervision and control over the academic and business affairs of West Virginia University.  While the University resides in the State of West Virginia, as the alter ego of the State, it is not a citizen for purposes of diversity jurisdiction.

2.     At the time of commencement of this action, Rodriguez was a citizen and resident of the State of West Virginia and was a citizen and resident of the State of West Virginia at all

times relevant to this action. Rodriguez served as Head Coach of the West Virginia University football team up to December 19, 2007.

## JURISDICTION

3. This Amended Complaint is proper pursuant to Rule 15(a) of the Federal Rules of Civil Procedure as it is filed before a responsive pleading has been served by Rodriguez. For the reasons set forth in the University's Motion to Remand and supporting memorandum filed January 18, 2008, diversity jurisdiction does not exist in this action. The contract at issue was made and entered into in Monongalia County, West Virginia for performance in whole or in part in Monongalia County, West Virginia. The action was improperly removed from the Circuit Court of Monongalia County, West Virginia by Rodriguez.

## NATURE OF ACTION

4. Pursuant to W.Va. Code § 55-13-1 *et seq.* and Rule 57 of the West Virginia Rules of Civil Procedure, the University seeks a declaratory judgment regarding the obligations of Rodriguez pursuant to the terms and conditions of the "Employment Agreement", including "First Amendment to the Employment Agreement for Richard Rodriguez" [the "First Amendment"] and "Second Amendment to the Employment Agreement for Richard Rodriguez" [the "Second Amendment"] [collectively referred to herein, at times, as the "Agreement"], entered into between the parties hereto. The "Employment Agreement" is attached as Exhibit "A." The First Amendment is attached as Exhibit "B." The Second Amendment is attached as Exhibit "C."

5. Specifically, the University seeks a declaratory judgment that Rodriguez is required to pay the University Four Million Dollars ($4,000,000.00) as a result of his voluntary termination of the Agreement by virtue of his resignation from the position of Head Coach of the

West Virginia University football team prior to the expiration of the Agreement and prior to August 31, 2008.

6. The University seeks a declaratory judgment that the University did not materially and substantially breach the Agreement.

7. The University seeks a declaratory judgment that Rodriguez never provided written notice to the University of any material and substantial breach as required by Article V(D)(1) of the Agreement and amended by the Second Amendment.

8. The University further asserts a claim for breach of contract in that Rodriguez is now in violation of certain terms and conditions of the Agreement.

**JUSTICIABLE CONTROVERSY**

9. A justiciable controversy exists between the parties as the University is informed and believes that Rodriguez does not intend to abide by the terms of the Agreement and, in fact, Rodriguez has not abided by certain terms of the Agreement.

**CHOICE OF LAW**

10. West Virginia law governs the validity and interpretation of the Agreement pursuant to the terms of the Agreement itself. Employment Agreement at ¶ XII, Ex. A.

**SUBSTANTIVE ALLEGATIONS**

11. On or about December 21, 2002, Rodriguez entered into the Employment Agreement with the University to serve as Head Coach of the West Virginia University football team for a term of seven (7) years beginning on January 1, 2003 and terminating on January 15, 2010. Employment Agreement at ¶ II, Ex. A.

12. On or about June 24, 2006, Rodriguez entered into the First Amendment with the University amending the Agreement. The First Amendment, among other things, increased

3

Rodriguez's compensation and provided for the payment by Rodriguez of liquidated damages to the University in the event Rodriguez terminated the Agreement prior to January 15, 2013.

13. On or about August 24, 2007, Rodriguez entered into the Second Amendment with the University further amending the Agreement. The Second Amendment was effective retroactively on December 8, 2006. The Second Amendment again increased Rodriguez's compensation.

14. The Second Amendment amended the Agreement, in part, by extending the term of the Agreement to January 15, 2014 and increasing the amount of liquidated damages Rodriguez must pay to the University in the event he terminated his employment under the Agreement. Second Amendment at ¶¶ 1, 6 (p. 4), Ex. C.

15. The Second Amendment deleted Article V(D) of the Agreement, as amended by the First Amendment, and replaced it, in relevant part, with the following:

> (D) <u>Termination by Coach</u>.
>
> (1) In the event that Coach terminates his employment under this Agreement because of material and substantial breach of the Agreement by University, if Coach has given written notice to the University within ninety (90) days of such breach and the breach has gone uncured for thirty (30) days after the University's receipt of such written notice, University will pay Coach:
>
> * * *
>
> (2) Except as provided in Article V(B), if Coach terminates his employment under this Agreement for any reason other than as set forth under Article V(D)(1):
>
> * * *
>
> (b) Unless Coach terminates his employment under this Agreement due to a permanent

4

> retirement from the University and all other employment with any coaching responsibility with an institution of higher education, in addition to all other forfeitures and penalties provided herein, Coach will pay University the sum of … (b) Four Million Dollars ($4,000,000.00), payable, as further described below, within two years of termination if termination occurs after August 31, 2007 and on or before August 31, 2008[.] … This sum shall be deemed to be liquidated damages and extinguish all rights of University to any further payment from Coach. All sums required to be paid by Coach to the University under this Section within two years shall be payable according to the following schedule: one-third due (30) days after termination; one-third due on the one year anniversary of termination; and one-third due on the second anniversary of termination.

Second Amendment at ¶ 6(D)(2)(b), Ex. C.

16. The Second Amendment further added new Articles XVI and XVII to the Agreement, which provide as follows:

> XVI. ASSISTANT COACHES' SALARY POOL
>
> The University shall make a one-time supplemental payment of One Hundred Thousand Dollars ($100,000) to the assistant coaches' salary pool by or before July 1, 2007. In addition, from July 21, 2006 through to the end of the term of this Agreement, the University shall make an annual Fifty Thousand Dollars ($50,000) payment to the assistant coaches' salary pool.
>
> * * *
>
> XVII. PUSKAR CENTER RENOVATIONS
>
> The Department of Intercollegiate Athletics hereby commits to the construction of and renovations to certain facilities as follows: (1) Solicitation of private financial contributions for the academic center in the amount of Two Million Two Hundred Thousand Dollars ($2,200,000) by December 2006 with construction to

5

        commence by the first quarter of 2007; and (2) Solicitation of private financial contributions for the locker room in the amount of Four Million Dollars ($4,000,000) by December 2007 with construction to commence by the first quarter of 2008.

Second Amendment at ¶¶ 10-11, Ex. C.

17. As provided in the Agreement, the Agreement was the result of arms length negotiation between Rodriguez and the University and their respective legal counsel and tax advisors. Second Amendment at ¶ 8, Ex. C. Rodriguez and the University were represented by counsel and advisors of their own choosing and had the full benefit of such counsel through the negotiation of the terms of the Agreement and the drafting and execution of the Agreement. Id. Rodriguez and the University entered into the Agreement freely and voluntarily and with the full intent to be bound thereby. Id.

18. Also as provided in the Agreement, Rodriguez and the University mutually understood that the Agreement contained all of the terms and conditions to which the parties had agreed and that no other understandings or representations, either oral or written, regarding the subject matter of the Agreement existed or bound the parties. Employment Agreement at ¶ X, Ex. A. Rodriguez and the University further agreed that any modification, amendment, or addendum to the Agreement was effective only if made in writing and signed by both parties. Id.

19. Rodriguez never provided written notice to the University, as required by Article V(D)(1) of the Agreement and amended by the Second Amendment, of any material and substantial breach of the Agreement by the University.

20. The University fulfilled all material and substantial terms of the Agreement as required as of the date of Rodriguez's termination of the Agreement, including, but not limited to, the supplemental payment to the assistant coaches' salary pool and certain Puskar Center renovations.

21. Upon information and belief, on or before December 14, 2007 and prior to Rodriguez's termination of the Agreement, Rodriguez engaged in discussions with the University of Michigan regarding employment as the Head Coach of the University of Michigan football team. Said discussions occurred without the prior knowledge or consent of the University.

22. Upon information and belief, on or before December 16, 2007 and prior to his resignation, Rodriguez and/or persons on his behalf communicated with student athlete recruits for the 2008 football season regarding his employment as the Head Coach of the University of Michigan football team. Said discussions occurred without the prior knowledge or consent of the University.

23. Rodriguez voluntarily resigned from the position as the Head Coach of the West Virginia football team effective December 19, 2007. See Correspondence from Rodriguez to Ed Pastilong (Dec. 18, 2007), attached as Exhibit "D." Accordingly, Rodriguez resigned prior to August 31, 2008.

24. By virtue of Rodriguez's voluntary termination of the Agreement and anticipated employment as the Head Coach of the University of Michigan football team, Rodriguez's resignation was not the result of Rodriguez's death, disability, or permanent retirement. Termination of the Agreement due to death, disability, or permanent retirement do not require the payment of liquidated damages to the University.

25. Pursuant to the Agreement, Rodriguez was required to pay one-third ($1,333,333.33) of the Four Million Dollars ($4,000,000.00) payment called for under the Agreement within thirty (30) days after termination of the Agreement. More than thirty (30)

days have elapsed since Rodriguez terminated the Agreement and Rodriguez has not made the first one-third payment to the University.

## COUNT I
## DECLARATORY JUDGMENT

26. The University repeats and reasserts the allegations contained in paragraphs 1 through 25 above as if fully set forth herein verbatim.

27. Based upon the foregoing, the University seeks the following declaratory judgment:

>   (a) The Agreement, including the First Amendment and the Second Amendment, is a valid and enforceable contract.
>
>   (b) Rodriguez is required to pay the University liquidated damages in the amount of Four Million Dollars ($4,000,000.00) arising out of his termination of his employment under the Agreement, specifically the Second Amendment.
>
>   (c) Rodriguez is required to pay the University pre-judgment interest on all sums not paid to the University by the time required by the Agreement, specifically the Second Amendment.
>
>   (d) The University has not materially or substantially breached the Agreement.

WHEREFORE, the plaintiff, West Virginia University Board of Governors for and on behalf of West Virginia University, seeks the above declaratory judgment and, as a result thereof, payment of Four Million Dollars ($4,000,000.00) from the defendant, Richard Rodriguez. The University further seeks reimbursement for any fees and/or costs sustained as a result of this declaratory judgment and any other relief that the Court deems just and proper.

# COUNT II
# BREACH OF CONTRACT

28. The University repeats and reasserts the allegations contained in paragraphs 1 through 25 above as if fully set forth herein verbatim

29. The University asserts that Rodriguez's failure to pay one-third ($1,333,333.33) of the Four Million Dollars ($4,000,000.00) payment due under the Agreement within thirty (30) days of Rodriguez's termination of the Agreement constitutes a breach of the Agreement thereby entitling the University to a present award of damages and other relief.

WHEREFORE, the plaintiff, West Virginia University Board of Governors for and on behalf of West Virginia University, seeks present damages in the amount of One Million Three Hundred Thirty-Three Thousand Three Hundred Thirty Three Dollars and Thirty-Three Cents ($1,333,333.33) together with pre- and post-judgment interest thereon, fees and/or costs together with such other and further relief as the Court deems proper.

The plaintiff, West Virginia University Board of Governors for and on behalf of West Virginia University, demands a trial by jury for all issues so triable.

**WEST VIRGINIA UNIVERSITY BOARD OF GOVERNORS for and on behalf of WEST VIRGINIA UNIVERSITY,**

By Counsel,

/s/ Jeffrey M. Wakefield
Thomas V. Flaherty (WV Bar No. 1213)
Jeffrey M. Wakefield (WV Bar No. 3894)
Jaclyn A. Bryk (WV Bar No. 9969)
Flaherty, Sensabaugh & Bonasso, PLLC
Post Office Box 3843
Charleston, West Virginia 25338-3843
Telephone: (304) 345-0200
Facsimile: (304) 345-0260

E-mail: tflaherty@fsblaw.com
E-mail: jwakefield@fsblaw.com
E-mail: jbryk@fsblaw.com