# EMPLOYMENT AGREEMENT

THIS EMPLOYMENT AGREEMENT (the "Agreement") is made this 21th day of December, 2002, by and between West Virginia University Board of Governors for and on behalf of West Virginia University (hereinafter "University") and Richard Rodriguez (hereinafter "Coach").

WHEREAS, University requires the services of a head coach for its football team; and

WHEREAS, Coach is willing to serve as University's head football coach under the following terms and conditions;

NOW, THEREFORE, WITNESSETH, that for and in consideration of the mutual covenants and conditions herein contained, and other good and valuable consideration, the receipt and sufficiency of all of which hereby is acknowledged by the parties hereto, University and Coach agree as follows:

## I. EMPLOYMENT

Subject to the terms and conditions contained herein, University hereby employs Coach as University's Head Football Coach and Coach hereby agrees to and does accept the terms and conditions for said employment outlined herein.

## II. TERM

The term of this Agreement shall be for a term of seven (7) years beginning on the 1st day of January, 2003, and terminating at 11:59 p.m. on the 15th day of January, 2010 ("the

1



EXHIBIT "A"

Termination Date"). The one-year period beginning January 16 each year shall be deemed to be an "Agreement Year" as that term is used in this Agreement.

### III. COMPENSATION AND BENEFITS

A. **Base Salary.** In consideration of services and satisfactory performance of the terms and conditions of this Agreement by Coach, University agrees to pay Coach an annual base salary of One Hundred Fifty Thousand Dollars ($150,000.00) per Agreement Year, payable in semi-monthly installments. Payment of all salary shall be in accordance with the payroll policies of University and subject to such deductions as may be required by applicable state and federal laws and regulations, and such employee benefit plans in which Coach elects to participate. Under no circumstances, however, shall the base salary ever be decreased during the term of this Agreement.

B. **Employee Benefits.** Coach will be eligible to participate in all employee benefit programs available to other University administrative employees. Such benefits shall be governed by University policies and the laws of the State of West Virginia and will include, among others, health insurance, retirement, vacation, sick leave and all other standard benefits.

C. **Other Benefits, Compensation and Incentives**

1. **Courtesy Automobiles:** Coach shall receive two (2) courtesy automobiles via the Wheels Club program.

2. **Tickets:** During each Agreement Year, Coach shall be provided twenty (20) tickets for each home football game, four (4) tickets for each home men's basketball game, and, if applicable, ten (10) tickets for each post-season bowl game in which University's football team participates, to be distributed by Coach as allowed by law and by the rules and regulations of the Big East Conference and

the NCAA.

3. **Camps:** Coach shall operate at least one football youth camp and/or clinic on campus as part of the Department of Intercollegiate Athletics' operations and shall be entitled to the net profits therefrom after the payment of expenses associated with the camp, including room and board, personnel, standard University overhead charges and other costs associated with the camp(s) and/or clinic(s). The dates for each camp(s) and/or clinic(s) must be mutually agreed upon by Coach and University in order to avoid conflicts with other events and to ensure adequate facilities and residence hall occupancy space. Coach and all other WVU employees will be required to use vacation time while working camps. Solely in connection with such camps, Coach shall have permission to use the terms "West Virginia University", "West Virginia Football", "Mountaineer Football" and associated logos, trademarks and designs (collectively, "WVU logos"), upon the prior approval of University, such approval not to be unreasonably withheld; provided, however, that said permission shall not include permission to sell, manufacture or distribute, or contract for the sale, manufacture, or distribution of WVU logo merchandise, or otherwise to sublicense WVU logos, without the prior written permission of the University Director of Intercollegiate Athletics and the University Manager of the Trademark Licensing Programs, which permission shall be granted or denied in their sole discretion.

4. **Supplemental Compensation:** University will guarantee Coach the sum of Five Hundred and Fifty Thousand Dollars ($550,000.00) for the first Agreement Year, increasing in each subsequent Agreement Year by Fifty

Thousand Dollars ($50,000.00) per year, as supplemental compensation during the term of this Agreement for promotional activities, payable in semi-monthly installments. Under no circumstances shall the amount of the supplemental compensation be decreased during the term of this Agreement. Such promotional activities shall include:

    a. A minimum of fourteen (14) appearances per Agreement Year at events sponsored by the Mountaineer Athletic Club or WVU affiliated organizations and sponsors;

    b. Appearances and participation in radio, television and Internet programs produced by the University's Mountaineer Sports Network or its affiliated organizations. Such appearances and participation shall include, but not be limited to, weekly radio talk shows, pregame/postgame radio shows, weekly television shows, regular Internet audio programs and occasional Internet columns. University retains exclusive rights to Coach's services in these areas.

    c. Participation in endorsement opportunities arranged for by University. Such opportunities include, but are not limited to, athletic footwear, apparel, sideline gear, equipment, uniforms and media/promotional roles for businesses or organizations. University will exclusively negotiate and structure all endorsement opportunities. In addition to the athletic footwear, apparel and equipment deals, five (5) other endorsement/promotional opportunities are anticipated at any given time. University will obtain approval from Coach prior to committing

4

Coach to any such endorsement or promotional agreement involving Coach or the use of Coach's image, which approval will not be unreasonably withheld. University retains exclusive rights to Coach's services in these areas. Coach is, and will remain, the sole and exclusive owner of his name and likeness and all proprietary and potentially proprietary rights therein. Coach hereby grants University permission to use his name and likeness during the term of this Agreement, which permission will terminate or expire when Coach's employment with University ends, except for historical and archival uses in records and publications related to Coach's tenure and performance at University.

  d. Participation in promotional and other activities as may be reasonably requested by University.

With respect to subsections a, c and d above, University agrees to consult with Coach and obtain his consent before scheduling such promotional activities, which consent shall not be unreasonably withheld. Except as limited or restricted by the provisions of this Article III(C)(4) and Article VII, and further subject to Coach's obligation to satisfy the terms and conditions of this Agreement, nothing contained herein shall be deemed to prevent Coach from arranging or participating in, and deriving personal income from, personal speaking engagements or other endeavors unrelated to his service as Head Football Coach, subject to prior approval of University, such approval not to be unreasonably withheld.

  5. **Incentives**: University shall cause to be paid to Coach, from appropriate

sources, annual incentives within One Hundred Twenty (120) days of the end of the season in which earned, for attainment of the following:

| | | |
|---|---|---|
| a. | (i) 30,000 season tickets sold (including employee and mini-packages), | $ 10,000.00 |
| | or | |
| | (ii) 35,000 season tickets sold (including employee and mini-packages) | $ 20,000.00 |
| | or | |
| | (iii) 40,000 season tickets sold (including employee and mini-packages) | $ 30,000.00 |
| b. | Satisfactory evaluation of football team's student academic achievement | $ 10,000.00 |
| c. | Big East regular season title (or share of title) | $ 75,000.00 |
| d. | (i) Non-BCS Bowl appearance | $ 25,000.00 |
| | or | |
| | (ii) Bowl Championship Series appearance | $ 75,000.00 |
| e. | National championship | $ 150,000.00 |
| f. | (i) Final Top 25 ranking in ESPN/USA Today or AP polls | $ 15,000.00 |
| | or | |
| | (ii) Final Top 10 ranking in ESPN/USA Today or AP polls | $ 25,000.00 |

6

g.  Team GPA of 2.65 or better for combined fall and spring semesters combined   $ 10,000.00

h.  For each class of recruits signed by Coach, if 60% or more of such recruits fulfill their eligibility and graduate from WVU within five years   $ 10,000.00

i.  Big East Conference coach of the year   $ 10,000.00

j.  National coach of the year   $ 20,000.00

6. **Club Memberships**: The University shall provide a membership for Coach and his family at a local country club.

## IV. PERFORMANCE

In the performance of his duties, Coach shall be responsible to and under the direct supervision of the Director of Intercollegiate Athletics. Without limiting the foregoing, Coach, in the performance of his duties, shall conduct himself at all times in a manner which is consistent with his position as an instructor of students and which presents a positive representation of West Virginia University. The parties agree that, although this Agreement is sports related, the primary purpose of the University and this Agreement is to support the University's educational mission. The educational purposes of the University shall have priority in the various provisions of this Agreement. Coach will follow all applicable University policies and procedures and perform his duties as assigned by the Director of Intercollegiate Athletics and will otherwise perform the requirements of the job description for the position of Head Football Coach (to the extent not inconsistent with the terms of this Agreement) attached as Exhibit 1 hereto and incorporated herein by reference. Coach shall not breach any local, state or

7

federal laws, ordinances, rules or regulations, or any of the written rules, regulations, policies, procedures or standards of University, the Big East Conference (or any other athletic conference of which University may become a member) or the NCAA, or allow or condone, directly or by negligent supervision, any such breach by any player or coach subject to his control or supervision. Such a breach by Coach, or Coach's allowing or condoning, directly or by negligent supervision, such a breach by a player or coach subject to his control or supervision, where such breach places the University or football program in a bad light or otherwise affects the operations of the football program or Coach's responsibilities under this Agreement, may result in disciplinary action and penalties ranging from termination (subject to the provisions of Article V(A), below), to public or private reprimand, as determined by the University President, consistent with the terms of this Agreement following consultation and review with the Director of Intercollegiate Athletics. Further, it is understood and agreed between the parties that University shall not reassign or transfer Coach to any position other than Head Football Coach during the term of this Agreement.

## V. TERMINATION

A. **For Cause by University**. The University specifically reserves the right to terminate this Agreement without further obligation at any time for cause, which shall be deemed to include the following:

> 1. The commission by Coach of a serious or major violation, whether intentional or negligent, or a pattern of violations, of the written rules, regulations, policies, procedures or standards of the NCAA, the University or the Big East Conference (or any other athletic conference of which University may become a member), or the allowing or condoning, whether directly or by negligent supervision, of any such violation by a

player or coach subject to his control or supervision;

2. Conviction (including a plea of no contest) of Coach of a felony or a crime involving moral turpitude;

3. Material and substantial breach of any term of this Agreement by Coach, which breach has gone uncured for thirty (30) days after written notice thereof by University to Coach; or

4. Willful or intentional disregard by Coach of the reasonable instructions of the Director of Intercollegiate Athletics or the President of University, which disregard has gone uncured for thirty (30) days after written notice thereof by University to Coach.

In the event that Coach is terminated pursuant to this section, Coach shall not be entitled to, nor shall University be required to pay, any portion of the compensation, benefits and/or incentives as set forth in Section III of this Agreement, except base salary, supplemental and incentive compensation actually earned, accrued but unpaid through the date of termination, all of which shall be paid within thirty (30) days of termination.

B. **Death, Disability or Permanent Retirement.** Except as stated in Article V(D)(3), in the event of the inability of Coach to continue to perform the essential functions of his position under this Agreement by reason of death, disability or permanent retirement, this Agreement shall thereupon terminate and all future obligations between the parties hereto shall cease. The parties further agree that in the event that Coach is unable to continue to perform his obligations under this Agreement and the Agreement is terminated pursuant to this Article V(B), Coach shall be entitled to all earned and accrued base salary and all supplemental and incentive compensation earned but unpaid as of the date of death, final determination of disability or permanent retirement. Such compensation shall be paid to Coach or his estate or beneficiaries,

9

as the case may be, and shall be in addition to standard University benefits, if any.

C. **Termination Without Cause by University.** In addition to the provisions set forth above, there also is reserved to University the right to terminate this Agreement without cause at any time. In the event that University terminates Coach without cause, University will pay Coach (1) all base salary, supplemental compensation and incentive compensation earned as of the date of termination, and (2) Two Million Dollars ($2,000,000.00), which sum shall be deemed to be liquidated damages and extinguish all rights of Coach to any further payments from University. All benefits and entitlements of Coach hereunder will terminate as of the date of termination by University without cause. Coach shall have no duty to mitigate, nor shall University have any right of offset.

D. **Termination by Coach.** (1) In the event that Coach terminates this Agreement because of material and substantial breach by University, which breach has gone uncured for thirty (30) days after written notice thereof by Coach to University, University will pay Coach (1) all base salary, supplemental compensation and incentive compensation earned as of the date of termination, and (2) Two Million Dollars ($2,000,000.00), which sum shall be deemed to be liquidated damages and extinguish all rights of Coach to further payments from University. Coach shall have no duty to mitigate, nor shall University have any right of offset.

(2) Except as provided in Article V(B), if Coach terminates the agreement for any reason without breach of the Agreement by University, in addition to all other forfeitures and penalties provided herein, Coach will pay University as liquidated damages Two Million Dollars ($2,000,000.00).

(3) In the event of an asserted permanent retirement by Coach, and in the further event that Coach resumes any coaching responsibilities with any other institution of higher

10

education within three (3) years of his asserted retirement, Coach shall be obligated to pay University Two Million Dollars ($2,000,000.00), which sum shall be deemed to be liquidated damages.

E. **Covenant Not To Compete**. Coach acknowledges that, during the term of employment by University, he will gain confidential information concerning University's athletic program and that the use of this confidential information by an opponent in the same conference as University would place University's athletic program at a serious competitive disadvantage. Accordingly, Coach expressly promises and agrees not to engage in employment with another Big East Conference school, or any other Conference in which University is a member, in any coaching capacity prior to the Termination Date. Coach further agrees that, because his services under this Agreement are of a special, unique, unusual, extraordinary and intellectual character which gives those services peculiar value, the loss to University of which cannot be reasonably or adequately compensated in damages in an action of law, and because said breach would place University at significant competitive disadvantage, University shall have the right to obtain from any court such equitable, injunctive, or other relief as may be appropriate, including a decree enjoining Coach from performing coaching-related services for any school in a Conference in which University is a member prior to the Termination Date.

## VI. OUTSIDE INCOME

Coach shall receive written approval from University Director of Intercollegiate Athletics or his designee prior to entering into any agreement for income and benefits from sources outside University, such approval not to be unreasonably withheld. Coach shall annually report in writing all income and benefits from sources outside University to the Director of Intercollegiate Athletics or his designee.

## VII. PUBLIC APPEARANCES

Coach shall make no public appearance, either in person or by means of radio, television, Internet or other means or medium, or willingly allow the use of his name in connection with his relationship to the University, when any such appearance or use of name will result in unfavorable reflection upon University or conflict with Coach's duties or University's rights under this Agreement.

## VIII. REPRESENTATIONS

Coach represents and warrants that he has not violated any of the rules and regulations of the NCAA, and he is not aware of any threatened or pending NCAA investigation involving his conduct at any other NCAA member institution.

## IX. PUBLICITY

Neither Coach nor any agent or representative of Coach shall make any public statement at any time bearing on the negotiation or award of this Agreement to the media or any other person or entity without the prior approval of the Director of Intercollegiate Athletics. Coach shall cooperate with all reasonable requests by the Director of Intercollegiate Athletics for assistance with publicity regarding the Agreement.

## X. ENTIRE AGREEMENT; AMENDMENT

It is mutually understood that this Agreement contains all of the terms and conditions to which the parties have agreed and that no other understandings or representations, either oral or written, unless referenced in the preceding paragraphs, regarding the subject matter of this Agreement shall be deemed to exist or to bind the parties hereto. Any modification, amendment or addendum to this Agreement shall be effective only if made in writing and signed by both parties.

## XI. SEVERABILITY

If any provision of this Agreement is held invalid or otherwise unenforceable, the enforceability of the remaining provisions shall not be impaired thereby, and such remaining provisions shall remain in full force and effect.

## XII. APPLICABLE LAW

This Agreement is made and entered in Monongalia County in the State of West Virginia and the laws of West Virginia shall govern its validity and interpretation and the performance by the parties of their respective duties and obligations hereunder.

## XIII. LEGAL COUNSEL

This Agreement is the result of arm's-length negotiation between the parties and their respective counsel, and each party has been represented by counsel of their own choosing, and had the full benefit of such counsel throughout the negotiation of the terms hereof and the drafting and execution of this document. Each party enters into this Agreement freely and voluntarily and with the full intent to be bound hereby.

## XIV. NOTICE

Any and all notices required or permitted to be given under this Agreement will be sufficient if furnished in writing and sent by registered or certified mail to the other party at such party's last known address. Any notice to University shall be copied to University's General Counsel and any notice to Coach shall be copied to Richard Davis, Cameron, Davis & Gonzalez, One Clearlake Centre, Suite 1601, 250 Australian Avenue South, West Palm Beach, Florida, 33401.

IN WITNESS WHEREOF, the parties hereto shall consider this Agreement to be effective on the 21th day of December, 2002.

WEST VIRGINIA UNIVERSITY BOARD
OF GOVERNORS FOR AND ON BEHALF
OF WEST VIRGINIA UNIVERSITY:

DAVID C. HARDESTY, JR., President

By _____
ED PASTILONG, Director of
Intercollegiate Athletics

By: _____
Richard Rodriguez