## Second Amendment to the Employment Agreement for Richard Rodriguez

This Second Amendment to the Employment Agreement (this "Second Amendment") is made by and between West Virginia University Board of Governors for and on behalf of West Virginia University ("University") and Richard Rodriguez ("Coach") as of this 24TH day of AUGUST 2007.

WHEREAS, the University and Coach entered into an Employment Agreement effective December 21, 2002 (the "Agreement");

WHEREAS, the University and Coach entered into a First Amendment to the Employment Agreement effective June 24, 2006 (the "First Amendment");

WHEREAS, the University and Coach entered into a Term Sheet on December 8, 2006 providing for further modifications to the Agreement; and

WHEREAS, the University and Coach now desire to definitively amend the Agreement to reflect the terms of the Term Sheet and in certain other respects by entering into this Second Amendment.

NOW, THEREFORE, in consideration of the mutual covenants and conditions contained herein University and Coach agree that, effective December 8, 2006, except as specifically indicated herein, the Agreement is amended as follows:

1. The first sentence of Article II, under the heading Term, is hereby deleted and the following substituted therefore:

> This Agreement shall be for a term ("the Term") beginning effective December 8, 2006 and ending at 11:59 p.m. on the 15th day of January, 2014 ("the Termination Date").

2. The first paragraph in Article III(C)(4), Supplemental Compensation, is hereby deleted and the following substituted therefore:

> (4) Supplemental Compensation. In consideration of Coach's performance of certain promotional activities described in this Section, the University will pay Coach supplemental compensation in the base amount of Two Hundred Fifty Thousand Dollars ($250,000) for the Agreement Year commencing on January 16, 2007. This base supplemental compensation shall be increased by an amount equal to Fifty Thousand Dollars ($50,000) each Agreement Year after January 16, 2007.
>
> (a) The University further guarantees payment to Coach of additional supplemental compensation in the amount of



EXHIBIT "C"

Three Hundred Thousand Five Hundred Dollars ($350,000) for each Agreement Year if and to the extent such amount is not earned and received directly by Coach through endorsement opportunities approved by the University. Any supplemental compensation guaranteed under this paragraph shall be payable to Coach as provided in paragraph (c), but in no event later than by the end of the Agreement Year.

(b) For each Bowl Championship Series (BCS) game appearance by the football team, University will increase Coach's supplemental compensation by an additional Fifty Thousand Dollars ($50,000.00) for each subsequent Agreement Year remaining in the Term.

(c) Supplemental compensation shall be payable in equal semi-monthly installments on the fifteenth (15th) and last day of each month during each Agreement Year.

(d) Under no circumstances shall the amount of the supplemental compensation be decreased during the Term.

(e) The promotional activities for which the Coach shall be responsible for shall include:

3. Article III(C)(4)(c) is hereby amended to increase the endorsement/promotional opportunities to ten from the five anticipated at any given time. There are no other amendments to that particular paragraph.

4. The first paragraph of Article III(C)(5), Incentives, is hereby deleted and the following substituted therefore:

(5) **Incentives.** University shall cause to be paid to Coach, from appropriate sources, annual incentives within sixty (60) days of the end of the season in which earned, but no later than two and one-half months (2 ½) after the end of the calendar year in which earned, for attainment of the following:

5. Article III(C)(7), Deferred Compensation, is hereby deleted and a new Article III(C)(7), Annual Retention Incentive, is hereby substituted therefore:

(7) Annual Retention Incentive. Starting with the Agreement Year beginning on January 16, 2007, for each Agreement Year in which Coach remains employed as head football coach of the University's football team on June 1 of that Agreement Year, Coach shall receive One Hundred Fifty Thousand Dollars ($150,000.00),

payable in a single, lump-sum payment, less all applicable payroll withholdings, as an incentive for remaining as head football coach. The first payment under this Section shall be paid, if earned, on June 1, 2007, and payments thereafter shall be paid, if earned, each subsequent June 1.

6. Article V(B), Death, Disability or Permanent Retirement, is hereby deleted and the following substituted therefore:

    (B) Death or Disability. In the event of Coach's death during the Term or the inability of Coach to continue to perform the essential functions of his position under this Agreement by reason of disability during the Term, Coach's employment under this Agreement shall terminate and all future obligations under the Agreement between the parties hereto shall cease; provided, however, that Coach shall be entitled to all earned and accrued base salary, supplemental compensation, and incentive compensation earned under the terms of this Agreement and not paid as of the date of termination of employment, less all applicable payroll withholdings, within thirty (30) days after termination. Such compensation shall be paid to or on behalf of Coach or his estate or his beneficiaries as the case may be, and shall be in addition to standard University benefits, if any.

7. Article V(C), Termination Without Cause by University, is hereby deleted and the following substituted therefore:

    (C) Termination Without Cause by University. In addition to the provisions set forth above, there also is reserved to University the right to terminate Coach's employment under this Agreement without cause at any time. In the event that University terminates Coach's employment without cause, University will pay to or on behalf of Coach:

        (1) All base salary, supplemental compensation, and incentive compensation earned under the terms of this Agreement and not paid as of the date of termination, less all applicable payroll withholdings, within thirty (30) days after termination; and

        (2) The further sum of (a) Four Million Dollars ($4,000,000.00) if termination occurs on or before August 31, 2008; or (b) Two Million Dollars ($2,000,000.00) if termination occurs after August 31, 2008 and on or before August 31, 2011; or (c) One Million Dollars ($1,000,000.00) if termination occurs after August 31, 2011

and on or before January 15, 2014. This sum shall be deemed to be liquidated damages and extinguish all rights of Coach to any further compensation from University, except as set forth in Article XV. All sums required to be paid by University to Coach under this Section shall be paid within thirty (30) days after termination, but no later than December 31 of the year of termination.

(3) Except as specifically set forth in this Agreement, all benefits and entitlements of Coach hereunder will terminate as of the date of termination by University without cause. Coach shall have no duty to mitigate, nor shall University have any right of offset.

6. Article V(D), Termination by Coach, is hereby deleted and the following substituted therefore:

(D) Termination by Coach.

(1) In the event that Coach terminates his employment under this Agreement because of material and substantial breach of the Agreement by University, if Coach has given written notice to the University within ninety (90) days of such breach and the breach has gone uncured for thirty (30) days after the University's receipt of such written notice, University will pay Coach:

(a) All base salary, supplemental compensation, and incentive compensation earned under the terms of this Agreement and not paid as of the date of termination, less all applicable payroll withholdings, within thirty (30) days after termination; and

(b) The further sum of (i) Four Million Dollars ($4,000,000.00) if termination occurs on or before August 31, 2008; or (iii) Two Million Dollars ($2,000,000.00) if termination occurs after August 31, 2008 and on or before August 31, 2011; or (iv) One Million Dollars ($1,000,000.00) if termination occurs after August 31, 2011 and on or before January 15, 2014. This sum shall be deemed to be liquidated damages and extinguish all rights of Coach to any further compensation from University, except as set forth in Article XV. All sums required to be paid by University to Coach under this Section

- 4 -

shall be paid within thirty (30) days after termination, but no later than December 31 of the year of termination.

(c) Except as specifically set forth in this Agreement, all benefits and entitlements of Coach hereunder will terminate as of the date of termination by Coach for material and subsequent breach of the Agreement by the University. Coach shall have no duty to mitigate, nor shall University have any right of offset.

(2) Except as provided in Article V(B), if Coach terminates his employment under this Agreement for any reason other than as set forth under Article V(D)(1):

(a) The University will pay Coach all base salary, supplemental compensation, and incentive compensation earned under the terms of this Agreement and not paid as of the date of termination, less all applicable payroll withholdings, within thirty (30) days after termination; and

(b) Unless Coach terminates his employment under this Agreement due to a permanent retirement from the University and all other employment with any coaching responsibility with an institution of higher education, in addition to all other forfeitures and penalties provided herein, Coach will pay University the sum of (a) Four Million Dollars ($4,000,000.00), payable in a single lump sum within thirty (30) days of termination, if termination occurs on or before August 31, 2007; or (b) Four Million Dollars ($4,000,000.00), payable, as further described below, within two years of termination if termination occurs after August 31, 2007 and on or before August 31, 2008; or (c) Two Million Dollars ($2,000,000.00), payable within two years of termination, if termination occurs after August 31, 2008 and on or before August 31, 2011; or (d) One Million Dollars ($1,000,000.00), payable in a single lump sum within thirty (30) days of termination, if termination occurs after August 31, 2011 and on or before January 15, 2014. This sum shall be deemed to be liquidated damages and extinguish all rights of

- 5 -

University to any further payment from Coach. All sums required to be paid by Coach to the University under this Section within two years shall be payable according to the following schedule: one-third due (30) days after termination; one-third due on the one year anniversary of termination; and one-third due on the second anniversary of termination.

(3) In the event of an asserted permanent retirement by Coach under the preceding paragraphs of this Section, and in the further event that Coach resumes any coaching responsibilities with any other institution of higher education within three (3) years of his asserted permanent retirement, Coach shall be obligated to pay University the sum of (a) Four Million Dollars ($4,000,000.00), payable in a single lump sum within thirty (30) days of resumption of coaching responsibilities, if the asserted permanent retirement occurs on or before August 31, 2007; or (b) Four Million Dollars ($4,000,000.00), payable, as further described below, within two years of resumption of coaching responsibilities if the asserted permanent retirement occurs after August 31, 2007 and on or before August 31, 2008; or (c) Two Million Dollars ($2,000,000.00), within two years of termination, if termination occurs after August 31, 2008 and on or before August 31, 2011; or (d) One Million Dollars ($1,000,000.00), payable in a single lump sum within thirty (30) days of resumption of coaching responsibilities, if the asserted permanent retirement occurs after August 31, 2011 and on or before January 15, 2014. This sum shall be deemed to be liquidated damages and extinguish all rights of University to any further payment from Coach. All sums required to be paid by Coach to the University under this Section within two years shall be payable according to the following schedule: one-third due thirty (30) days after termination; one-third due on the one year anniversary of termination; and one-third due on the second anniversary of termination.

7. A new Article XV, Special Retirement Plans, is hereby inserted as follows:

XV. SPECIAL RETIREMENT PLANS

(A) Governmental Plans. The University shall sponsor and maintain for Coach's benefit a (i) defined benefit pension plan ("the Pension Plan") and (ii) defined contribution plan ("the DC Plan"). The

Pension Plan shall be intended to meet the requirements of Section 401(a) of the Internal Revenue Code of 1986, as amended (the "Code") and the DC Plan shall be intended to meet the requirements of either Section 401(a) or 403(b) of the Code, and each plan shall be a "governmental plan" within the meaning of Section 414(d) of the Code (together, the Pension Plan and DC Plan are referred to as the "Governmental Plans"). The Governmental Plans shall be designed, established, and administered in a manner consistent with the provisions of this Article, and funded by a trust or the purchase of insurance and/or annuity contracts to which University contributions shall be allocated as further provided herein.

(B) Excess Benefit Plan. The University shall additionally sponsor and maintain for Coach's benefit a "qualified governmental excess benefit arrangement" described in Section 415(m)(3) of the Code, to which shall be paid that part of the Coach's benefit payable under the DC Plan that exceeds the limit of Code Section 415(c). The Excess Benefit Plan shall be designed, established, and administered in a manner consistent with the provisions of this Article, and funded by a trust, the assets of which shall be subject to the University's general creditors until distributed, to which University contributions shall be allocated as further provided herein.

(C) Establishment of Plans; Plan Documents.

(1) The University shall establish the Governmental Plans and the Excess Benefit Plan (referred to collectively as "the Plans") effective as of January 1, 2007 through the formal adoption of Plan and trust documents (referred to as the "Plan Documents") as soon as practicable (and in no event later than December 31, 2007). The Plan Documents shall reflect the plan design described in Section (D) hereof and shall otherwise be consistent with applicable law and regulations.

(2) As soon as practicable after establishment of the Plans, the University shall apply for favorable letters of determination from the Internal Revenue Service ("IRS") with respect to the Governmental Plans' initial qualification under Section 401(a) of the Code, and for a favorable private letter ruling from the IRS to confirm that the Excess Benefit Plan meets the requirements of Section 415(m)(3) of the Code and, if applicable, that the DC Plan meets the requirements of Section 403(b) of the Code.

(3) In the event that the IRS does not approve one or more of the Plans such that contributions are returned to the University and/or the University concludes that funding at the levels provided for under Article XV.E is not possible based upon a determination by the IRS, the parties agree to reopen this Article XV of the Agreement within sixty (60) days of such IRS determination to provide for an alternative compensation arrangement for the Coach; provided, however, that in no event shall the University's financial commitment under such alternative arrangement be greater or less than that set forth under Article XV.E.

(D) Design of the Plans.

(1) Plan Year; Limitation Year. The Governmental Plans and Excess Benefit Plan shall be administered by the University on the basis of a plan year comprised of the twelve (12) month period ending December 31. The Governmental Plans' "limitation year" within the meaning of Section 415 of the Code shall be the calendar year ending within the plan year.

(2) Pension Plan. The Pension Plan shall be designed, to the extent possible, to provide Coach with the maximum annual benefit that can be accrued under Section 415(b) of the Code. The normal retirement age under the Plan shall be fifty-five (55). The Pension Plan shall include an optional lump sum form of benefit for Coach (or his designated beneficiary in the event of his death).

(3) DC Plan and Excess Benefit Plan. The DC Plan and Excess Benefit Plan shall allow for Coach (or his designated beneficiary in the event of his death) to elect payment of his vested benefits in the form of a lump sum distribution, periodic or non-periodic installments, through the purchase of an annuity, or a combination of one or more of the foregoing.

(4) Vesting of Coach's Benefits under the Governmental Plans. Coach shall at all times have a fully vested interest in benefits and contributions that he accrues under the Governmental Plans and Excess Benefit Plan.

(5) Plan Investments. Coach, directly or through his financial advisor as designated by Coach in writing, may recommend a trustee and/or annuity provider for the Governmental

- 8 -

Plans and the Excess Benefit Plan, which the University agrees to give full consideration, but the University shall have the ultimate authority to select and appoint the trustee and/or annuity provider of the Governmental Plans and the Excess Benefit Plan of its choice. Coach shall have the discretion to direct the investment of his accounts under the DC Plan and the Excess Benefit Plan.

(E) Funding. The University will make contributions to the Governmental Plans and the Excess Benefit Plan in the amounts set forth in this Section which shall be allocated between the Plans as provided in Section (F).

(1) Amount of Contributions. The University's contributions for each plan year ending within the Term shall be the sum of the "fixed contribution" and "contingent contribution" (if any) determined in accordance with the following schedule: [Initial fixed contribution is $550,000 less amount already paid to Coach prior to September 1, 2007, plus $100,000]

| Plan Year Ending | Fixed Contribution | Contingent Contribution |
|---|---|---|
| December 31, 2007 | $550,000.00 | |
| December 31, 2008 | $550,000.00 | |
| December 31, 2009 | $550,000.00 | $1,099,999.00 |
| December 31, 2010 | $550,000.00 | |
| December 31, 2011 | $550,000.00 | $666,666.00 |
| December 31, 2012 | $550,000.00 | |
| December 31, 2013 | $550,000.00 | $666,666.00 |

(2) Terms and Conditions of Fixed Contributions. If Coach is not employed as the University's Head Football Coach as of the last day of the Agreement Year that begins in a plan year, the fixed contribution shall be the fixed contribution amount set forth in paragraph (1) above for the plan year, multiplied by a ratio the numerator of which is the number of days Coach was employed as University's Head Football Coach that Agreement Year, and the denominator of which is 365; provided, however, that for the plan year ending December 31, 2007, the ratio numerator shall be the number of days Coach was employed as University's Head Football Coach from September 1, 2007 through January 15, 2008, and the ratio denominator shall be 137.

(3) Terms and Conditions of Contingent Contributions:

- 9 -

(a) <u>First Contingent Contribution</u>. The "contingent contribution" for the plan year ending December 31, 2009 shall be made only if Coach remains employed as the University's Head Football Coach as of December 5, 2009; provided, however, that if Coach terminates employment earlier than December 5, 2009 due to: (i) the University's termination of his employment without cause under Article V(C) of this Agreement, (ii) Coach's termination of the Agreement pursuant to Article V(D)(1) hereof, or (iii) Coach's death or termination due to disability pursuant to Article V(B), then the contingent contribution shall be made for the plan year in which the Coach terminates employment.

(b) <u>Second Contingent Contribution</u>. The "contingent contribution" for the plan year ending December 31, 2011 shall be made only if Coach remains employed as the University's Head Football Coach as of December 5, 2011; provided, however, that if Coach terminates employment earlier than December 5, 2011 due to: (i) the University's prior termination of his employment without cause under Article V(C) of this Agreement, (ii) Coach's prior termination of the Agreement pursuant to Article V(D)(1) hereof, or (iii) Coach's death or termination due to disability pursuant to Article V(B), then the contingent contribution shall be made for the plan year in which the Coach terminates employment.

(c) <u>Third Contingent Contribution</u>. The "contingent contribution" for the plan year ending December 31, 2013 shall be made only if Coach remains employed as the University's Head Football Coach as of December 5, 2013; provided, however, that if Coach terminates employment earlier than December 5, 2013 due to: (i) the University's prior termination of his employment without cause under Article V(C) of this Agreement, (ii) Coach's prior termination of the Agreement pursuant to Article V(D)(1) hereof, or (iii) Coach's death or termination due to disability pursuant to Article V(B), then the contingent contribution shall be made for the plan year in which the Coach terminates employment.

(F) Allocation of University's Contributions. The University's fixed contributions and contingent contributions, if any, for a plan year shall be allocated between the Plans as follows:

(1) Pension Plan: first, to the Pension Plan, the amount determined necessary to fund the accrued benefit payable under the Pension Plan in order to protect the University from any funding shortfall in the event of Coach's early termination, as determined by an "enrolled actuary" (within the meaning of Section 7701(a)(35) of the Code); and

(2) DC Plan: next to the DC Plan, an amount representing the maximum annual addition for the limitation year under Section 415(c) of the Code (taking into account amounts, if any, allocated for Coach's benefit under any other defined contribution plan maintained by the University which are treated as annual additions for purposes of applying Section 415(c) of the Code); and

(3) Excess Benefit Plan: finally, the remaining amount of such contributions, to the Excess Benefit Plan.

(G) The University's contributions to the Governmental Plans and Excess Benefit Plan for a plan year shall be made as soon as practicable after the close of each plan year end and, in no event, later than the date prescribed by law.

(H) The reasonable annual costs of administering the Governmental Plans and Excess Benefit Plan by the University on behalf of the Coach shall be paid by the Plans to the extent permitted by applicable law.

8. Article XIII, Legal Counsel is hereby renamed Legal and Tax Counsel. The text thereunder is hereby deleted and the following substituted therefore:

XIII. LEGAL AND TAX COUNSEL

This Agreement is the result of arms length negotiation between the parties and their respective legal counsel and tax advisors. Each party has been represented by such counsel and advisors of their own choosing and had the full benefit of such counsel throughout the negotiation of the terms hereof and the drafting and execution of this document. The University makes no representations, warranties, or guaranties as to the tax affect of the compensation and retirement plans contained herein. Each party enters into this Agreement freely and voluntarily and with the full intent to be bound thereby.

9.  Article XIV is hereby amended to provide that any notice to Coach required or permitted under this Agreement will be sent to Coach and copied to Michael L. Brown, c/o Lock Metz Malinovic, 6900 Camelback Road, Suite 600, Scottsdale, Arizona 85251. There are no other amendments to that particular paragraph.

10. A new Article XVI, Assistant Coaches' Salary Pool, is hereby inserted as follows:

XVI. ASSISTANT COACHES' SALARY POOL

The University shall make a one-time supplemental payment of One Hundred Thousand Dollars ($100,000) to the assistant coaches' salary pool by or before July 1, 2007. In addition, from July 21, 2006 through to the end of the term of this Agreement, the University shall make an annual Fifty Thousand Dollars ($50,000) payment to the assistant coaches' salary pool.

11. A new Article XVII, Puskar Center Renovations, is hereby inserted at follows:

XVII. PUSKAR CENTER RENOVATIONS

The Department of Intercollegiate Athletics hereby commits to the construction of and renovations to certain facilities as follows: (1) Solicitation of private financial contributions for the academic center in the amount of Two Million Two Hundred Thousand Dollars ($2,200,000) by December 2006 with construction to commence by the first quarter of 2007; and (2) Solicitation of private financial contributions for the locker room in the amount of Four Million Dollars ($4,000,000) by December 2007 with construction to commence by the first quarter of 2008.

12. A new Article XIX, Tax Code Compliance, is hereby inserted, as follows:

XVIII. TAX CODE COMPLIANCE

(A) Effective January 1, 2005, this Agreement, as amended by the First Amendment and this Second Amendment, is intended to be in good faith compliance with Section 409A of the Code and the regulations thereunder.

(B) Effective January 1, 2005, for purposes of Article V under this Agreement, termination of employment shall have the meaning set forth in the regulations under Section 409A of the Code.

(C) Effective January 1, 2005, any amounts payable under Article V(C) and Article V(D) of this Agreement are payable only upon termination of the Coach's employment under the Agreement, and shall be paid within thirty (30) days after such termination. This Section (C) is superceded as of June 24, 2006 by the First Amendment to the Employment Agreement.

1.3. Except as set forth in this Second Amendment, the Agreement remains in full force and effect and unamended.

IN WITNESS WHEREOF the parties hereto have set their hands and seals by their fully authorized representatives.

West Virginia University Board of Governors
On behalf of West Virginia University
David C. Hardesty, President

_____      _____
Ed Pastilong                   Witness
Director of Athletics

Acknowledged by

_____      _____
Richard Rodriguez