## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

### AT CLARKSBURG

**WEST VIRGINIA UNIVERSITY**
**BOARD OF GOVERNORS** for and on behalf of
**WEST VIRGINIA UNIVERSITY**,

     Plaintiff,

v.                                                        Civil Action No. 1:08-CV-00041
                                                          (Hon. John P. Bailey, District Judge)

**RICHARD RODRIGUEZ**,

     Defendant and Third Party Plaintiff,

v

**WEST VIRGINIA UNIVERSITY**
**FOUNDATION, INC.**, a West Virginia corporation,

     Third Party Defendant.

### DEFENDANT'S ANSWER TO AMENDED COMPLAINT
### WITH AFFIRMATIVE DEFENSES, COUNTERCLAIM AND
### THIRD-PARTY COMPLAINT WITH JURY DEMAND

Defendant, Richard Rodriguez, by and through counsel, and for his Answer to the

Plaintiff's Amended Complaint hereby states and avers as follows:

### PARTIES

1.     Concerning Paragraph No. 1 of Plaintiff's Amended Complaint, Defendant ADMITS that

the West Virginia University Board of Governors is the governing body with general

supervision and control over the academic and business affairs of West Virginia University

and that Plaintiff is a resident of the State of West Virginia.  Defendant denies that the

University is the alter ego of the state, and further denies that it is not a citizen for purposes

of diversity jurisdiction.

2.      Concerning Paragraph No. 2 of Plaintiff's Amended Complaint Defendant DENIES that he
        is a resident of the State of West Virginia, and further denies that he was a resident of the
        State of West Virginia at the time this action was commenced, having changed his domicile
        to the State of Michigan.  Further answering, Defendant ADMITS that he served as the head
        coach of the West Virginia University football team until approximately December 19, 2007.

## JURISDICTION

3.      Concerning Paragraph No. 3 of Plaintiff's Amended Complaint Plaintiff DENIES that this
        case is properly before the Circuit Court of Monongalia County, West Virginia and, having
        timely and properly filed a Notice of Removal states that this matter is properly before the
        United States District Court for the Northern District of West Virginia.  Defendant further
        states Plaintiff has consented and/or waived its right to object to the jurisdiction of this Court
        by filing an Amended Compliant in this Court.  The remaining portions of Paragraph No. 3
        are denied.

## NATURE OF ACTION

4.      Paragraph No. 4 of Plaintiff's Amended Complaint states a legal conclusion to which no
        response is required.  Further answering, and to the extent a response is required, Defendant
        DENIES that all terms and conditions of his employment are set forth within the
        Employment Agreement, the First or Second Amendments to said Employment Agreement.

5.      Concerning Paragraph No. 5 of Plaintiff's Amended Complaint, Defendant DENIES that he
        is required to pay the University Four Million Dollars ($4,000,000.00) as a result of his
        resignation from the position as head coach of the West Virginia University football team.

6. Concerning Paragraph No. 6 of Plaintiff's Amended Complaint, Defendant DENIES that the University did not materially and substantially breach the agreement prior to the Coach's resignation.

7. Concerning Paragraph No. 7 of Plaintiff's Amended Complaint, Defendant ADMITS that he did not provide written notice to the University of material and substantial breaches prior to the filing of the lawsuit, but on January 10, 2008, he gave a detailed listing of the breaches to Plaintiff's agents in writing. Further answering, Defendant states that various representatives of the University, including, but not limited to, President Michael Garrison, Chief of Staff Craig Walker, and Athletic Director Ed Pastilong, in meeting(s) that occurred on or about December 15, 2007 acknowledged that the University was in material and substantial breach of various terms of the Employment Agreement and indicated that nothing would be done to cure the same.

8. Concerning Paragraph No. 8 of Plaintiff's Amended Complaint, Defendant DENIES this paragraph.

## JUSTICIBLE CONTROVERSY

9. Concerning Paragraph No. 9 of Plaintiff's Amended Complaint, Defendant states that this lawsuit was filed prematurely, but ADMITS that this matter is appropriate for declaratory and other relief, and that a justicible controversy exists between the parties. Defendant denies that he has not abided by the terms of the contract.

## CHOICE OF LAW

10. Concerning Paragraph No. 10 of Plaintiff's Amended Complaint, Defendant ADMITS that West Virginia law governs the validity and interpretation of the Employment Agreement.

## SUBSTANTIVE ALLEGATIONS

11.    Defendant ADMITS the allegations and averments contained in Paragraph No. 11 of Plaintiff's Amended Complaint.

12.    Defendant ADMITS the allegations and averments contained in Paragraph No. 12 of Plaintiff's Amended Complaint.

13.    Defendant ADMITS the allegations and averments contained in Paragraph No. 13 of Plaintiff's Amended Complaint. Further answering, Defendant submits that various material oral representations were made to him on or about August 24, 2007 contemporaneous with the execution of the Second Amendment to the Employment Agreement, including a representation in front of witnesses by then President Elect Garrison that Garrison did not believe in buyout provisions, and that the amount as stated within the Employment Agreement would not be fully enforced, and stated that: "If a dispute occurred, the lawyers would get together and split the difference." Defendant Rodriguez relied upon these representations when he executed the Second Amendment to the Employment contract.

14.    Concerning Paragraph No. 14 of Plaintiff's Amended Complaint, Defendant states that the Second Amendment speaks for itself. The remaining allegations and averments contained in Paragraph No. 14 of Plaintiff's Amended Complaint are DENIED.

15.    Defendant ADMITS the allegations and averments contained in Paragraph No. 15 of Plaintiff's Amended Complaint. Further answering, Defendant states that numerous other oral material representations and promises were made contemporaneously with the signing of the August 24, 2007 Amendment.

16.    Defendant ADMITS the allegations and averments contained in Paragraph No. 16 of

Plaintiff's Amended Complaint except that the applicable provisions are not quoted.

17. Concerning Paragraph No. 17 of Plaintiff's Amended Complaint, Defendant ADMITS that the parties were represented by legal counsel and/or tax advisors regarding the August 24, 2007 Amendment. Further answering, Defendant DENIES that the parties freely and voluntarily entered into said Employment Agreement with the full intent to be bound by the terms thereby, states that numerous material oral inducements and other material representations were made which were witnessed by the various parties present, and that President Elect Garrison and others on behalf of the University stated at the time that they did not intend Defendant to be bound by the express terms of the "buyout" provisions.

18. Defendant DENIES the allegations and averments contained in Paragraph No. 18 of Plaintiff's Amended Complaint. Further Answering, numerous other oral material understandings and representations and inducements were made regarding the subject matter of the Agreement at the time the Second Amendment was signed.

19. Concerning Paragraph No. 19 of Plaintiff's Amended Complaint, Defendant ADMITS that he did not provide written notice to the University of any material and substantial breaches of the Agreement by the University until January 10, 2008. Further answering, Defendant states that at a meeting held on or about December 15, 2007 that he met with various representatives of the West Virginia University, being Chief of Staff Craig Walker, Athletic Director Ed Pastilong, and President Mike Garrison, wherein the numerous breaches of the Agreement by the West Virginia University were discussed, and the representatives of the West Virginia University unequivocally stated that they had no intention of curing said breaches, thus amounting to an anticipatory repudiation of the Employment Agreement.

Certain of these statements were made in the presence of others.

20. Concerning Paragraph No. 20 of Plaintiff's Amended Complaint Defendant DENIES that West Virginia University fulfilled all material and substantial terms of the Agreement as required, including, but not limited to the supplemental payments owed to the Assistant Coach's salary pool as well as certain Puskar Center renovations.

21. Concerning Paragraph No. 21 of Plaintiff's Amended Complaint, Defendant ADMITS that his advisors may have had discussions with the University of Michigan, but Defendant does not recall discussions himself, but DENIES all the remaining allegations of Paragraph No. 21 of Plaintiff's Amended Complaint.

22. Defendant ADMITS he communicated with certain athletes only following announcement of his resignation, but DENIES the remaining allegations of Paragraph No. 22 of Plaintiff's Amended Complaint.

23. Concerning Paragraph No. 23 of Plaintiff's Amended Complaint, Defendant ADMITS that he resigned from the position as the head coach of the West Virginia University football team effective December 19, 2007, but gave verbal notice prior thereto. The remaining allegations of Paragraph 23 are hereby denied.

24. Defendant DENIES the allegations and averments contained in Paragraph No. 24 of Plaintiff's Amended Complaint.

25. Concerning Paragraph No. 25 of Plaintiff's Amended Complaint, Defendant ADMITS that he has accepted the position as head coach of the University of Michigan football team. The remaining allegations and averments contained in Paragraph No. 25 of Plaintiff's Amended Complaint are hereby DENIED. Further answering, Defendant DENIES that the

Employment Agreement, including the First Amendment and the Second Amendment is the entirety of the parties' agreements and understandings; DENIES that he is required to pay the University liquidated damages in the amount of Four Million Dollars ($4,000,000.00); DENIES that he is required to pay the University any pre-judgment interest; and DENIES that the University is not in material and substantial breach of the Employment Agreement.

26. Defendant DENIES the allegations and averments contained in Paragraph No. 26 of Plaintiff's Amended Complaint.

27. Defendant DENIES the allegations and averments contained in Paragraph No. 27 of Plaintiff's Amended Complaint.

28. Defendant DENIES the allegations and averments contained in Paragraph No. 28 of Plaintiff's Amended Complaint.

29. Defendant DENIES the allegations and averments contained in Paragraph No. 29 of Plaintiff's Amended Complaint.

## FIRST AFFIRMATIVE DEFENSE

### (General Denial)

30. Any and all allegations contained within the Plaintiff's Amended Complaint not expressly admitted herein are hereby DENIED.

## SECOND AFFIRMATIVE DEFENSE

### (Penalty is Not Enforceable as Against Public Policy)

31. The amount of liquidated damages sought by Plaintiff is completely unreasonable based upon

their anticipated and actual damages suffered by any breach of the Employment Agreement by the Defendant, and thereby constitute an unenforceable penalty and is against public policy.

## THIRD AFFIRMATIVE DEFENSE

### (Breach by Plaintiff)

32.    That West Virginia University substantially and materially breached the Employment Agreement prior to the Defendant's resignation, and in fact, those actions forced the Defendant to resign.

## FOURTH AFFIRMATIVE DEFENSE

### (Waiver and Estoppel)

33.    Plaintiff expressly waived various provisions of the Employment Agreement and is estopped from seeking to enforce the same. Specifically, President Garrison, for and on behalf of the Plaintiff, stated contemporaneously with the execution of the August 24, 2007 Amendment and represented on behalf of West Virginia University that he "did not believe in buyouts" and that the University did not intend to be bound by, nor enforce the liquidated damages provision to its fullest extent.

## FIFTH AFFIRMATIVE DEFENSE

### (Laches and Unclean Hands)

34.     The Plaintiff's claims are barred and/or limited by the equitable doctrines of laches and/or unclean hands.

## SIXTH AFFIRMATIVE DEFENSE

### (Fraudulent Inducement)

35.     Defendant was fraudulently induced to enter into the Second Amendment to the Employment Agreement based upon certain representations made by officials of Plaintiff, including, but not limited to, President Garrison.

## SEVENTH AFFIRMATIVE DEFENSE

### (Condition Precedent)

36.     The time for payment of any monies that may be owed would be after January 18, 2008 and this lawsuit pre-dates the alleged due date and is premature.

## EIGHTH AFFIRMATIVE DEFENSE

### (Lack of Authority – Failure to Take Proper Legal Action)

37.     Defendant states that upon information and belief, that the Plaintiff lacks authority to bring this lawsuit because to Defendant's knowledge no meeting was held by the Board of Governors, and the Board of Governors did not authorize the institution of this lawsuit.

## NINTH AFFIRMATIVE DEFENSE

### (Waiver of Jurisdiction)

38.  Initially, in the original Complaint of the Plaintiff, it alleged that it was a resident of the State of West Virginia. Now, only after removal by Defendant, it is contradictorily asserting it somehow is a resident, but not a citizen, of West Virginia, because Defendant has removed this case to Federal Court. Both by admitting at the commencement of this lawsuit up to the time of removal that it is a resident of West Virginia, and by Plaintiff filing an Amended Complaint seeking relief in the United States District Court for the Northern District of West Virginia, it is consenting and or waiving any objection to the jurisdiction of said Court.

## TENTH AFFIRMATIVE DEFENSE

### (Real Parties In Interest – Indispensable Parties)

39.  Plaintiff has failed to join all real parties in interest in this litigation. The West Virginia University Foundation, Incorporated, is an interested, indispensable and necessary party based both on past actions taken in like circumstances and because all payments that would be made to West Virginia University most likely would be directed to the West Virginia University Foundation, Incorporated. In addition, if West Virginia University was required to pay monies to the Defendant it would have to seek cooperation and disbursement of funds from the West Virginia University Foundation, Incorporated to provide funding to West Virginia University. Because the West Virginia University Foundation, Incorporated is a "private entity" it is keeps secret from the public the agreements and arrangements that it has with donors to provide funds to West Virginia University.

40. In addition, the Defendant's compensation and bonuses, in part, was paid by West Virginia University Foundation, Incorporated, and other promises made to Defendant were to be funded by the West Virginia University Foundation, Inc.


## ELEVENTH AFFIRMATIVE DEFENSE

### (Imprudent Actions by West Virginia University)

41. Defendant states that when the original lawsuit was filed right after Christmas in 2007, it sought $4,000,000.00 in liquidated damages from this Defendant. The news media and statements attributed to representatives of West Virginia University made it appear as though this Defendant immediately owed $4,000,000.00. The contract provides that if the $4,000,000.00 figure is enforceable it's is payable one-third within thirty (30) days of termination and the second payment is not due until one year from the date of termination. By making such allegations which were unfounded, untrue, Plaintiff clearly attempted to smear the image of the Defendant in a spiteful retaliation for his forced resignation.


## TWELFTH AFFIRMATIVE DEFENSE

### (Pattern of Conduct by Plaintiff)

42. During the parties' negotiations in August, 2007, President-Elect Garrison represented that a liquidated damage amount was something that would be negotiated if Defendant chose to leave West Virginia University. At the time of then President-Elect Garrison's representations, Plaintiff knew Defendant was aware of the settlement made in late April or early May 2007 with the former West Virginia University basketball coach, John Beilein,

whose similar contractual liquidated damage penalty was reduced very substantially after he left West Virginia University to go to the University of Michigan.

## THIRTEENTH AFFIRMATIVE DEFENSE

### (Attorney General Participation)

43.     Defendant states that under West Virginia Law the Attorney General must be a participant attorney in any action brought by a state agency, something that was not done in this case.

## FOURTEENTH AFFIRMATIVE DEFENSE

### (Proper Governmental Approval of Contract)

44.     Defendant states that the Employment Contract which Plaintiff is suing on was required to be approved by the Attorney General and, upon information and belief, that was not done as the documents attached to Plaintiff's Complaint that Plaintiff represents to be the contract(s) at issue in this case do not have any indication of Attorney General review or approval.  In addition, Defendant states that no appropriation required by law was made to fund the payments in future years that would have been required under the contract upon which the Plaintiff is suing, making the contract a nullity.  In addition, upon information and belief, the Employment Contract was not filed with the State Auditor as required by West Virginia Code § 5A-3-13, as the purported contracts attached to the Amended Complaint bear no indication of such required filing.

## FIFTEENTH AFFIRMATIVE DEFENSE

### (Unjust Enrichment)

45.     The West Virginia University Foundation, Incorporated agreed to and was paying a substantial portion of the compensation that was paid to Richard Rodriguez. West Virginia University had virtually no actual responsibility for a substantial portion of the salary that the Plaintiff contracted to pay to the Defendant.   Thus, if the Plaintiff was to receive $4,000,000.00 it would be excessively and unjustly enriched. The reason for this is that West Virginia University would be gaining substantially more than it (as opposed to the West Virginia University Foundation, Inc.) committed to pay to the Defendant since a substantial portion of the monies that Defendant was receiving came from West Virginia University Foundation, Incorporated.

        **WHEREFORE,** Defendant Richard Rodriguez respectfully prays this Honorable Court dismiss this action with prejudice, and that Defendant be awarded his costs and attorneys' fees most wrongfully incurred herein.

                                **RICHARD RODRIGUEZ**
                                ---------By Counsel---------

/s Sean P. McGinley
Sean P. McGinley, Esq. (WV Bar No. 5836)
**DITRAPANO BARRETT & DIPIERO PLLC**
604 Virginia Street East
Charleston, WV 25301
Phone:  304-342-0133
Fax:     304-342-4605

Marvin A. Robon, Esq. (OH/0000644)
R. Ethan Davis, Esq. (OH/0073861)
**BARKAN & ROBON LTD.**
1701 Woodlands Drive, Suite 100
Maumee, OH 43537
Phone: (419) 897-6500
Fax:    (419) 897-6200
        Co-counsel for Defendant

## <u>COUNTERCLAIM</u>

1.  Defendant adopts all of the statements and allegations contained in the Answer as if fully
    written herein at length.

2.  Defendant states that he is a resident of the State of Michigan and has been since December
    2007, that the amount in controversy in this cause exceeds $75,000.00, and that the Plaintiff
    is a resident of the State of West Virginia creating diversity of citizenship between the
    parties.

3.  Defendant further states that in December 2006, Plaintiff agreed to extend the existing
    employment contract with the Defendant at an increased rate of pay and Plaintiff issued a
    term sheet to the news media setting forth various specified amounts not agreed to by
    Defendant.  Unfortunately, there was a change of administration at the West Virginia
    University and the existing President of the University at that time never signed nor
    completed the Second Amendment to the Employment Contract which terms had not been
    agreed to yet by Defendant.

4.  In August 2007, just prior to the football season, pressure was put on the Defendant to
    execute the Second Contract Amendment (retroactive to December 2006) so there would be

-14-

a document in writing. Defendant was told the following to induce him to execute the writing:

    a.    That the major donors to the Athletic Department at the West Virginia University insisted upon a $4,000,000.00 penalty clause in the event that Defendant left the employ of the Plaintiff.

    b.    That Defendant would be given additional monies to pay assistant coaches more money for salary increases.[1]

    c.    That Defendant would be given a website to promote the athletic program.

    d.    That the students under the athletic program would not be required to return their books at the end of the semester season as was the current practice at that time.

    e.    That monies would be made available for the Puskar Center renovation to increase the viability of the football program being coached by Defendant.

    f.    Other promises were made to help the athletic program, in particular, the football division.

    g.    That Michael Garrison, the incoming President of West Virginia University, indicated that if Defendant wanted to leave "the lawyers would get together and reduce the cost of the Buyout to $2,000,000.00."

5.    Defendant relied upon the representations made above. Contrary to the promises and representations made by the Plaintiff through President-Elect Garrison, Athletic Director

---

[1]    Noteworthy, is since Defendant has left West Virginia University , the Plaintiff increased the salary of the assistant coaches.

Pastilong, and Craig Walker, as the Chief of Staff, these promises were neither kept nor implemented and Defendant states he was wrongfully, and/or fraudulently induced to sign the Second Contract Amendment in August 2007.

6.      Not only did West Virginia University President Garrison, Athletic Director Pastilong, and the Board of Governors not perform the promises made, but on or about December 15, 2007, Athletic Director Pastilong and the President Garrison, in separate meetings, both stated directly to Defendant that they would *not* comply with the promises previously made to him. Thus, Defendant considered the contract of employment to be breached by Plaintiff's representatives. In addition to Defendant's oral specification of the Plaintiff's breaches to President Garrison and Athletic Director Pastilong on December 15, 2007, Defendant has specified those breaches in a supplemental resignation letter dated January 10, 2008, attached hereto as Exhibit "A."

7.      In addition, the representatives of West Virginia University promised donations to the 1100 Mountaineer Club would be used for air travel for recruiting. The funds that were allocated and promised to the Defendant to be used for the purpose of air travel for recruiting were utilized by West Virginia University for other purposes, thereby breaching the promises made to Defendant.

8.      In addition, after Defendant resigned from West Virginia University, various University representatives released copies of the lawsuit filed against him and other media releases, enraging and inciting certain fans and causing them to make threats upon Defendant, his family, and his property. Said actions were taken with the intention of damaging the Defendant's reputation. Some of the threats were carried out, wherein Defendant's mailbox

was destroyed, nasty signs were put in his family's front gate, and in addition, he had been told his family basically will be unable to sell their house for its true value because no one would want to purchase this house that was owned by a "traitor."

9. Further, Defendant states that the Plaintiff University has continued to make statements to the media that are untrue and/or of a negative character and cast Defendant in a false light regarding his character and they continue to submit half-truths about the reasons he decided to leave West Virginia University. In addition, upon information and belief, the Plaintiff University has released false and untruthful information to media members knowing that it would be published with an intention to harm Defendant. More recently, Plaintiff's agents falsely accused Defendant of intentionally destroying University records that were the only source of certain documentation, which was not true. This false information was issued by Plaintiff's agents with the intent to damage Defendant's reputation.

10. The actions of Plaintiff and its agents are slanderous and were done with an intent to punish or otherwise harm the reputation of Defendant. By publicizing false information to the news media Defendant's reputation has been tainted by the malicious actions of the agents of the Plaintiff causing damage to the Defendant.


**COUNT I**
**Breach Of Contract, False Inducement**
**And Misrepresentation**

11. Defendant incorporates all of the foregoing statements and allegations as though fully rewritten herein at length.

12. Defendant further states that Plaintiff falsely induced and made material misrepresentations

to Defendant to induce Defendant to execute the Second Contractual Amendment attached to the Complaint by making false promises that it never intended to keep and in fact did not keep causing damage to Defendant.

13. Plaintiff anticipatorily repudiated the contract by stating it would not perform on the various promises thus relieving Defendant of any obligations of additional performance under the contract.

## COUNT II
### Lack Of Mutuality And Inability To Fund Penalty

14. Defendant incorporates all of the foregoing statements and allegations as though fully rewritten herein at length.

15. Defendant further states that the penalty clause inserted in the contract (attached to the Complaint) that was supposed to be mutual (being $4,000,000.00 also for West Virginia University) was a sham because West Virginia University had not allocated nor did it have capacity to pay $4,000,000.00 in the event of a breach by Plaintiff since funding was never appropriated for that purpose.

16. Defendant further states the penalty amount was supposed to be mutual but the Plaintiff could not fund the sums without legislative or other approvals so there was lack of mutuality of contract.

## COUNT III
### Invalid Penalty Clause

17. Defendant incorporates all of the foregoing statements and allegations as though fully

rewritten herein at length.

18. Defendant further states that the liquidated damages sum of $4,000,000.00 is unreasonable and is a penalty not enforceable under law and that the damages sustained by the Plaintiff University are minimal or non-existent. Any attempt to enforce the $4,000,000.00 penalty or any other liquidated damage amount in excess of Defendant's salary for one year is a penalty and is contrary to public policy since it bears no relationship whatsoever to any damages that would be suffered by the Plaintiff.

19. Defendant further states that since the resignation of Defendant, Plaintiff has won a BCS Bowl Game convincingly against the University of Oklahoma, has retained a new coach, and has not suffered any monetary damages whatsoever.

20. Defendant further states that Plaintiff and its representatives have failed to accept responsibility for their actions, that their actions were intentional and they took certain actions in giving false information to the media in an effort to harm the reputation and professional image of the Defendant causing emotional distress to the family of Defendant and putting the family of Defendant in fear for their safety.

## COUNT IV
## Declaratory Judgment

21. Defendant incorporates all of the foregoing statements and allegations as though fully rewritten herein at length.

22. Defendant requests that the Court declare that that Second Amendment to the Contract was induced by misrepresentation and is not enforceable. In the alternative, Defendant requests

that the liquidated damages provision of $4,000,000.00 contained in the Second Amendment to the Employment Contract is not enforceable since it is a penalty and those types and amount of damages have never been suffered by the Plaintiff and at the very least an unbiased jury should determine the damages.

**COUNT V**
**Failure of Condition Precedent**

23. Defendant incorporates all of the foregoing statements and allegations as though fully rewritten herein at length.

24. Defendant further states that the Second Amendment to the Contract of Employment provides that if the Defendant left the employ of the Plaintiff University he would be required to pay a penalty of $4,000,000.00 but that the first payment due was not required to be made until thirty days after the resignation of the Defendant which date is January 18, 2008.

25. In section (2)(b) page 5 and 6 of the Second Amendment to the Employment Contract the following is stated if the coach voluntarily terminates his employment:

> ". . . or (b) Four Million Dollars, ($4,000,000.00), payable, as further described below, within two years of termination if termination occurs after August 31, 2007 and on or before August 31, 2008; . . . All sums required to be paid by Coach to the University under this section within two years shall be payable according to the following schedule; one-third due (30) days after termination; one-third due on the one year anniversary of termination; and one-third due on the second anniversary of termination.

-20-

26.    Defendant resigned effective December 19, 2007 so the payment that was due at the end of the thirty day time period would not be due until January 18, 2008.

### COUNT VI
### Anticipatory Breach

27.    Defendant incorporates all of the foregoing statements and allegations as though fully rewritten herein at length.

28.    Defendant further states that there was an anticipatory breach by the Plaintiff University when University President Garrison and the Athletic Director Pastilong on or about December 15, 2007, indicated to the Defendant that they would not carry out the promises made and terms agreed upon leading up to the execution of the Second Amendment to Defendant's Employment Contract.

29.    Defendant further states that he was constructively terminated and that the Plaintiff University breached the Employment Agreement causing damage to the Defendant.

### COUNT VII
### Monies Due and Owing for Performance

30.    Defendant incorporates all of the foregoing statements and allegations as though fully rewritten herein at length.

31.    Defendant states that Plaintiff was to file a direct deposit covering certain aspects of his employment agreement said direct deposit was received on Friday, January 18, 2008, however, because of the short time line for filing an Answer and Counterclaim, Defendant

never received an accounting to determine whether all of the funds that were to be paid to him have been received including, but not limited to, vacation and sick pay. Whatever monies that are still due and owing should be trebled pursuant to West Virginia law which provides for prompt payment under contracts of employment.

WHEREFORE, Defendant prays that he recover on his Counterclaim the following:

1. Compensatory damages to be used as an offset of any money due Plaintiff in excess of $75,000.00; and

2. Compensatory damages in excess of $75,000.00 for bonuses and other monies owed under the employment arrangement; and

3. The determination by the Court in the form of declaratory judgment that the $4,000,000.00 penalty clause and Second Amendment to the Contract are not enforceable to the extent of $4,000,000.00; and

4. For such other relief which may be just and proper in the premises;

5. For cost, interest and expenses incurred in the lawsuit.

## THIRD-PARTY COMPLAINT

For his Third-Party Complaint against West Virginia University Foundation, Incorporated, Defendant, and Third-Party Plaintiff, Richard Rodriguez states the following:

1. Defendant and Third- Party Plaintiff, Richard Rodriguez, adopts all of the statements and allegations contained in the foregoing Answer to Amended Complaint and Counterclaim as if fully rewritten herein.

2. That West Virginia University Foundation, Incorporated is a corporation organized and

formed under the laws of the State of West Virginia.

3.     That West Virginia University Foundation, Incorporated's principal office is in Morgantown, West Virginia.

4.     That West Virginia University Foundation, Incorporated (hereinafter "Foundation") supplies funding through various donors and bequests to various departments and athletic programs at West Virginia University.

5.     That the Foundation is integral part of West Virginia University and its Athletic Department, and that it pays a substantial portion of the expenses incurred by West Virginia University and the University's Athletic Department and football program.

6.     That West Virginia University has alleged that it has been damaged by Richard Rodriguez leaving the head football coaching position. The only way to tell whether or not West Virginia University has been damaged is to see if its donations to the Foundation have decreased and/or if other expenses have increased at West Virginia University. In this regard, West Virginia University was able to hire assistant coach, Bill Stewart at a salary which was a small percentage of what Richard Rodriguez was being paid so there was no additional cost or expense incurred in that regard.

7.     Defendant and Third-Party Plaintiff, Richard Rodriguez further states that if his employment contract was found to be valid including any liquidated damage or penalty provision it was always the intent of the parties that payment would be made to West Virginia University Foundation, Incorporated making it a necessary party to this litigation.

8.     Press releases and statements have been released recently by West Virginia University and the Foundation indicating that their donations were at an all time high into the Foundation.

-23-

The only way for Richard Rodriguez to obtain a fair trial and to see if damages actually have been incurred by West Virginia University is to review the books and records of the Foundation, along with donations that have been made since his departure, compared with donations prior to his departure from the West Virginia University.

9. Richard Rodriguez further states that the Foundation funds millions of dollars to West Virginia University and its athletic program each and every year.

10. Because of contributions from the West Virginia University Foundation, Inc., the University's Athletic Department and its football program are self-sufficient.

11. Richard Rodriguez further states that the $4,000,000.00 penalty contained in his Employment Contract is unjust and that the sum is so large that it constitutes a penalty and is against public policy.

12. Defendant and Third-Party Plaintiff further states that a jury should determine the fairness of what liquidated damages amount to or the actual damages sustained by West Virginia University, and the only way to do that is to have open access to the books and records of the Foundation and determine the cash flow between West Virginal University and the Foundation, and therefore the Foundation is a necessary and indispensable party to this action.

13. Defendant and Third-Party Plaintiff further states that there is common control with certain representatives from the Board of Governors and the Board of Trustees of the Foundation. Further, Plaintiff and the Foundation are united in interest.

14. Defendant and Third-Party Plaintiff further states that the Foundation was to fund certain projects for the football program at West Virginia University requested by Richard

Rodriguez as the head coach and those funds were not forthcoming despite the fact that those funds were promised by President Garrison and others in order to induce Defendant and Third-Party Plaintiff, Richard Rodriguez, to sign a $4,000,000.00 penalty clause on his Second Amendment Contract extension.

15. Defendant and Third-Party Plaintiff further states that it was represented to him by President Garrison of West Virginia University and others that certain large donors to the Foundation had insisted that there be a $4,000,000.00 buyout clause and it has been determined that those representations were false and deceiving to Richard Rodriguez.

16. That when Defendant's employment contract extension was drafted there was also a $4,000,000.00 penalty for West Virginia University in the event it terminated Defendant and Third-Party Plaintiff. West Virginia University never had budgeted nor did it have $4,000,000.00 to pay Defendant and Third-Party Plaintiff, Richard Rodriguez, and Richard Rodriguez was assured that funding would be made available from the West Virginia University Foundation, Incorporated which would pass the money for any buyout to West Virginia University then who would then pay Richard Rodriguez.

17. West Virginia University Foundation, Incorporated is an integral part of the operations of West Virginia University and provides millions of dollars in funds annually to West Virginia University. In particular, it provides substantial funding for the athletic programs including the football program where Richard Rodriguez was the head coach.

18. West Virginia University Foundation, Incorporated was set up as a private corporation so it would not be subject to disclosure requirements or Freedom of Information Act requests. The formation of the West Virginia University Foundation, Incorporated directly and

-25-

exclusively benefits West Virginia University. In fact, it is the alter ego of West Virginia University.

19. Since the Foundation is so integral involved in the operations of West Virginia University, in order to protect the interest of Richard Rodriguez the books and records of the Foundation need to be made available so that a fair calculation of damages allegedly incurred by West Virginia University as alleged in its Amended Complaint can be calculated.

20. Richard Rodriguez further states that part of the funding to make payment under the Employment Contract which is the subject of this lawsuit was to come from West Virginia University Foundation, Incorporated. Therefore, the West Virginia University Foundation, Inc. is a necessary and indispensable party to this action.

WHEREFORE, Richard Rodriguez prays that West Virginia University Foundation, Incorporated be ordered to do the following:

1. Open its books and records concerning donations from various donors to the football and athletic programs, including but not limited to all internal and external correspondence concerning the same.

2. That an audit be ordered to determine if West Virginia University in conjunction with the West Virginia University Foundation, Incorporated suffered any damages whatsoever by the departure of Richard Rodriguez.

3. For declaratory judgment finding that the West Virginia University Foundation, Incorporated is an integral financing arm for providing financial resources to West Virginia University, its Athletic Department and football program, and that its assistance would be required in the event West Virginia University had to pay any liquidated damages or penalty to Richard

Rodriguez.

4. For such other further and equitable relief which may be just and proper.

5. For a declaration that all sums received by West Virginia University Foundation, Incorporated for purposes of this lawsuit be deemed received by West Virginia University.

6. That this Court in the alternative align West Virginia University Foundation, Incorporated, a necessary and indispensable party, as a co-Plaintiff with West Virginia University.

Defendant and Third party Plaintiff herein demands a trial by jury on all issues triable thereto.

**RICHARD RODRIGUEZ**
**---------By Counsel---------**

/s Sean P. McGinley
Sean P. McGinley, Esq. (WV Bar No. 5836)
**DITRAPANO BARRETT & DIPIERO PLLC**
604 Virginia Street East
Charleston, WV 25301
Phone: 304-342-0133
Fax:     304-342-4605

Marvin A. Robon, Esq. (OH/0000644)
R. Ethan Davis, Esq. (OH/0073861)
**BARKAN & ROBON LTD.**
1701 Woodlands Drive, Suite 100
Maumee, OH 43537
Phone: (419) 897-6500
Fax:     (419) 897-6200
    Co-counsel for Defendant