IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG DIVISION

**WEST VIRGINIA UNIVERSITY**
**BOARD OF GOVERNORS for and on**
**behalf of WEST VIRGINIA UNIVERSITY,**

      **Plaintiff,**

**v.**                                      Civil Action No.: 1:08-CV-00041
                                                (Honorable John Preston Bailey)

**RICHARD RODRIGUEZ,**

      **Defendant.**

**PLAINTIFF WEST VIRGINIA UNIVERSITY BOARD OF GOVERNORS'**
**REPLY TO DEFENDANT RICHARD RODRIGUEZ'S RESPONSE TO MOTION TO**
**REMAND AND MOTION FOR COSTS, EXPENSES, AND ATTORNEY FEES**

**PRELIMINARY STATEMENT**

The defendant, Richard Rodriguez ["Rodriguez"], asks this Court to embrace an argument that has been rejected by the West Virginia Supreme Court of Appeals on at least three occasions. West Virginia's highest court makes abundantly clear that the plaintiff, West Virginia University Board of Governors [the "University"], is a State agency and, therefore, is an arm of the State. This conclusion by the West Virginia Supreme Court of Appeals is not a passing statement, but the result of much consideration and analysis. Despite this fact, Rodriguez suggests this Court engage in further analysis and rule directly contrary to well-established West Virginia law. Such an exercise is unnecessary as the ruling on this issue by the West Virginia Supreme Court of Appeals, the final arbiter of West Virginia law, is entitled great deference. In fact, the United States Court of Appeals for the Sixth Circuit showed such deference in holding that the Board of Regents was an alter ego of the State for diversity jurisdiction relying upon those very decisions holding the University to be an arm of the State. As it is firmly established

that neither a state nor its alter ego is a citizen for purposes of diversity jurisdiction, this action must be remanded to the Circuit Court of Monongalia County, West Virginia.

The University contends that the Court need not address Rodriguez's claim of Michigan citizenship as a result of the foregoing. However, as Rodriguez claims Michigan citizenship as a basis for invoking diversity jurisdiction, the University is compelled to address this issue. Rodriguez fails to fulfill his burden of proving that he was a citizen of Michigan on the date this action was filed. While Rodriguez attaches documentation to support his claim of Michigan citizenship, Rodriguez does not address any of the other factors playing into this determination as considered by this Court in <u>Mylan Pharmaceuticals v. Cunard</u>, civil action number 1:06-cv-117 (Sept. 5, 2006), which requires citizenship to be determined by a totality of the evidence. Further, Rodriguez argues that he changed citizenship in one day; coincidentally, the date this action was filed. The University continues to assert that Rodriguez was a West Virginia citizen on the date this action was filed. To the extent Rodriguez takes issue with this assertion, the University requests to engage in limited jurisdictional discovery, something which is clearly permitted by federal precedent, because such discovery should dispel the notion that Rodriguez was a Michigan citizen on December 27, 2007.

**ARGUMENT**

I.  **THIS ACTION IS NOT REMOVABLE AS THE UNIVERSITY IS AN ARM OF THE STATE.**

   A.  **The West Virginia Supreme Court of Appeals has conclusively determined that the University is an arm of the State thereby making any further analysis unnecessary.**

Rodriguez simply cannot overcome the fact that the University is an arm of the State and, therefore, is not subject to diversity jurisdiction under 28 U.S.C. § 1332.[1] Rodriguez asks this Court to directly contradict rulings from the West Virginia Supreme Court of Appeals on three separate occasions and engage in an unnecessary analysis to find that the University is a citizen of West Virginia subject to diversity jurisdiction. See Syl. pt. 1, University of West Virginia Bd. of Trustees v. Graf, 205 W.Va. 118, 516 S.E.2d 741 (1998); Syl. pt. 1, City of Morgantown v. Ducker, 153 W.Va. 121, 168 S.E.2d 298 (1969); Syl. pt. 2, State ex rel. Bd. of Governors of West Virginia University v. Sims, 134 W.Va. 428, 59 S.E.2d 705 (1950). However, the classification of the University as an arm of the State has been thoroughly considered by West Virginia's highest court and supported by the United States Court of Appeals for the Sixth Circuit. Any decision to classify the University as a citizen runs contrary to this well-established precedent. Indeed, this Court would stand alone if it adopts Rodriguez's argument. Accordingly, this action is not appropriate for removal based on diversity pursuant to 28 U.S.C. § 1332 and should be remanded to the Circuit Court of Monongalia County, West Virginia.

28 U.S.C. § 1332 provides in relevant part that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of

---

[1] Rodriguez makes a number of accusations in his response regarding the authority of the University to bring this action. Specifically, Rodriguez calls into question whether the members of the Board approved the action. These periphery arguments are not only meritless, but irrelevant to the question of whether subject matter jurisdiction exists.

$75,000, exclusive of interest and costs, and is between … citizens of different states[.]"[2] It is well-established that neither a state nor its alter ego is a citizen for purposes of diversity jurisdiction. See Ristow v. South Carolina Ports Auth., 27 F.3d 84, 89 (4th Cir. 1994) (internal citations omitted), vacated on other grounds 513 U.S. 1011 (1994), quoted in West Virginia ex rel. McGraw v. Minnesota Mining & Mfg. Co., 354 F.Supp.2d 660, 663 (S.D.W.Va. 2005). See also State of West Virginia v. Anchor Hocking Corp., 681 F.Supp. 1175, 1177 (N.D.W.Va. 1987) review denied by 857 F.2d 1469 (4th Cir. 1988). Therefore, "a suit between a state, or its alter ego, and a citizen of another state is not a suit between citizens of different states and diversity does not exist." Ristow, 27 F.3d at 89 quoted in State ex rel. McGraw, 354 F.Supp.2d at 663.

"When a case has been removed, the defendant bears the burden of showing federal jurisdiction has been invoked properly." McCoy v. Erie Ins. Co., 147 F.Supp.2d 481, 486 (S.D.W.Va. 2001) (internal citation omitted). "[F]ederal courts construe the removal statute narrowly, *resolving any doubts against removability*." (*emphasis* added) Somlyo v. J. Lu-Rob Enter., Inc., 932 F.2d 1043, 1045-46 (2nd Cir. 1991) quoted in Federal Ins. Co. v. Tyco Int'l. Ltd., 422 F.Supp.2d 357, 367 (S.D.N.Y. 2006). "Removal jurisdiction is strictly construed inasmuch as it implicates significant federalism concerns and abridges the deference courts

---

[2] Rodriguez misconstrues applicable law in an attempt to fulfill his burden of proving that the University is subject to federal diversity jurisdiction. Defendant's Response at p. 6. Rodriguez cites McCoy v. Erie Ins. Co., 147 F.Supp.2d 481 (S.D.W.Va. 2001), for the proposition that the record and time for establishing jurisdiction is confined to the time removal occurs. Defendant's Response at p. 4. However, Rodriguez fails to acknowledge that while the amount in controversy is determined by considering the judgment that would be entered if the plaintiff prevailed on the merits of the case as it stands at the time of removal, that citizenship of parties is assessed at the time the action was filed. McCoy, 147 F.Supp.2d at 489 (amount in controversy determined at time of removal); Freeport-McMoRan, Inc. v. K N Energy, Inc., 498 U.S. 426, 428 (1991) (diversity of citizenship is assessed at the time action is filed). Therefore, any determination of citizenship for purposes of this Motion should be assessed at the time the action was filed, December 27, 2007, and not when Rodriguez removed the action.

generally give to a plaintiff's choice of forum." Zerafa v. Montefiore Hosp. Hous. Co., Inc., 403 F.Supp.2d 320, 324 (S.D.N.Y. 2005). Rodriguez has not, and cannot, meet his burden.

As previously acknowledged by the University, citizenship for purposes of diversity jurisdiction is generally a question of federal law. Long v. Richardson, 525 F.2d 74, 79 (6th Cir. 1975) cited in Hughes-Bechtol, Inc. v. West Virginia Bd. of Regents, 737 F.2d 540, 543 (6th Cir. 1984) cert. denied 469 U.S. 1018. However, in Hughes-Bechtol, Inc. v. West Virginia Bd. of Regents, the United States Court of Appeals looked to West Virginia case authority to determine whether the Board of Regents was a citizen of West Virginia for purposes of diversity jurisdiction. The Sixth Circuit's holding is in accordance with case law from the United States Court of Appeals for the Fourth Circuit recognizing that while the question of citizenship for purposes of diversity jurisdiction is ultimately one of federal law, federal courts should consult state law in making a decision. Maryland Stadium Auth. v. Ellerbe Becket Inc., 407 F.2d 255, 265 (4th Cir. 2005).

The University does not dispute that the question of whether an entity is an alter ego of the state is a fact-intensive undertaking.[3] See Maryland Stadium Auth., 407 F.3d at 257. This inquiry is completely unnecessary in this case as the West Virginia Supreme Court of Appeals has completed this undertaking and made it abundantly clear in syllabi that "[t]he Board of Governors of West Virginia University is a State agency, and, as such, is an arm of the State …"

---

[3] Rodriguez takes issue with the University for not addressing Maryland Stadium Auth. in its Motion to Remand. Rodriguez even goes so far as to suggest that the University "will attempt to correct its error in its reply brief and address the correct standard and perhaps raise factual issues that were not set forth in its Motion or supporting memoranda [sic]." Defendant's Response at p. 15. However, Rodriguez's hopes for any concession that the University erred are unavailing as the West Virginia Supreme Court of Appeals has thoroughly considered the status of the University and held that it is an arm of the State – a fact completely disregarded by Rodriguez in his response. The University continues to rely on this authority from West Virginia's highest court and does not raise any new "factual issues" outside the case law already tendered in the University's Motion and supporting memorandum since any further development is unnecessary.

5

Syl. pt. 1, City of Morgantown, 153 W.Va. 121, 168 S.E.2d 298; Syl. pt. 1, University of West Virginia Bd. of Trustees, 205 W.Va. 118, 516 S.E.2d 741; Syl. pt. 2, State ex rel. Bd. of Governors of West Virginia University, 134 W.Va. 428, 59 S.E.2d 705.  Moreover, the Sixth Circuit gave deference to the West Virginia Supreme Court's conclusion on this issue in holding that the Board of Regents was not a citizen of West Virginia, but rather an agency and alter ego of West Virginia, for purposes of diversity jurisdiction.  Hughes-Bechtol, Inc., 737 F.2d at 543. And, even as acknowledged in Maryland Stadium Auth., "the manner in which state law addresses the entity remains 'important, and potentially controlling.'"  Hall v. Medical College of Ohio at Toledo, 742 F.2d 299, 304 (6th Cir. 1984) quoted in Maryland Stadium Auth., 407 F.3d at 265.

Because this Court should defer to West Virginia's highest court on issues of state law, a review of decisions from the West Virginia Supreme Court of Appeals on this issue is useful. See e.g. Talkington v. Atria Reclamelucifers Fabrieken BV, 152 F.3d 254, 260 (4th Cir. 1998). In City of Morgantown v. Ducker, the West Virginia Supreme Court of Appeals directly engaged in an analysis of state law to determine whether the University was a State agency for purposes of statutory immunity.  After reviewing these statutory provisions, the West Virginia Supreme Court concluded as follows:

> The board of governors is a public and governmental corporation. … From the foregoing statutory provision it is clear that the members of the board of governors are appointive public officers and that with respect to the business and affairs of the West Virginia University the board of governors acts for any in behalf of the State of West Virginia and in so doing exercises the sovereign power and authority of the State.
>
> Though the title to all property of the university is vested in the board of governors the board holds such property in trust for the State and not as a separate or independent corporate entity. … Moreover, the board of governors is entirely dependent on the

> Legislature for its financial support as the governing body of the university and all its departments. Moneys received and administered by the board of governors are public moneys and such moneys, whether derived from admission fees to athletic contests, from tuition fees, from medical and hospital services, and from appropriations by the Legislature, are public moneys … .
>
> * * *
>
> Education is a proper function of State government, <u>State ex rel. Board of Governors of West Virginia University v. Sims</u>, 134 W.Va. 428, 59 S.E.2d 705, and the board of governors, in the discharge of its duties, is engaged in the performance of a governmental function of the State.
>
> * * *
>
> Under the foregoing authorities the Board of Governors of West Virginia University is a State agency … .

<u>City of Morgantown</u>, 153 W.Va. at 125-131, 168 S.E.2d at 301-304.[4] The Sixth Circuit noted this decision as a basis for holding that the Board of Regents was not a citizen for purposes of diversity jurisdiction. <u>Hughes-Bechtol, Inc.</u>, 737 F.2d at 544.

Rodriguez essentially asks this Court to "reinvent the wheel" in order to come to a conclusion completely contrary to the rulings of the West Virginia Supreme Court of Appeals. Even the case most strongly relied upon by Rodriguez does not suggest a federal court overrule the holdings of other courts, much less a state's highest court, when engaging in an analysis as to

---

[4] Recent statutory changes concerning the composition and authority of the University have not fundamentally changed the nature of the University and do not justify any new analysis. Although the number of members increased from nine to sixteen, twelve lay members continue to be appointed by the governor with the advice and consent of the Senate. W.Va. Code § 18B-2A-1(c). Members must still qualify by taking and subscribing to the oath of office as prescribed by section five, article IV of the Constitution and members appointed by the Governor are still removable for official misconduct, incompetence, neglect of duty or gross immorality. <u>Id.</u> at (l)-(m). The University retained the power and duty to "[d]etermine, control, supervise and manage the financial, business and education policies and affairs of [West Virginia University]." W.Va. Code § 18B-2A-4. Moreover, the University "shall consult, cooperate and work with the State Treasurer and the State Auditor to update as necessary and maintain an efficient and cost-effective system for the financial management and expenditure of special revenue and appropriated state funds … ." W.Va. Code § 18B-2A-4(u).

whether an entity is an alter ego of a state for purposes of diversity jurisdiction. See Maryland Stadium Auth., 407 F.3d at 265. Yet, that is exactly what Rodriguez is asking this Court to do.

Rodriguez's attempts to differentiate the University from the State have no basis in law or fact. First, Rodriguez argues that any monetary recovery would not go to the State, but rather the West Virginia University Foundation, Inc. Defendant's Response at p. 9. However, Rodriguez's argument has no basis in the employment contract at issue as it calls for payments to be made to the University. Second, Rodriguez argues that the University is not an alter ego of the State because the Attorney General is not listed as counsel of record. Such argument fails because counsel of record, Thomas V. Flaherty, Esq. and Flaherty, Sensabaugh & Bonasso, PLLC, have been appointed special assistant Attorneys General by the West Virginia Office of the Attorney General for purposes of prosecuting this action on behalf of the University. Third, Rodriguez makes a number of general statements about the operational autonomy of the University which are not supported by any legal authority, but only Rodriguez's assumptions on how the University operates. Fourth, Rodriguez points to a number of provisions of Chapter 18, Article 11A as further support that the University is not an arm of the State. Yet, regardless of these provisions, the West Virginia Supreme Court of Appeals has continuously held that the governing body of the University is an arm of the State. Accordingly, Rodriguez's attempts to override well-established authority regarding the classification of the University as a citizen are without merit.

Tellingly, Rodriguez fails to even acknowledge these holdings of the West Virginia Supreme Court of Appeals and the United States Court of Appeals for the Sixth Circuit. Rather, Rodriguez elects to engage in his own analysis with the hope that this Court will take a position in direct contrast with West Virginia's highest court. In fact, Rodriguez acknowledges that a

8

state court's view of the status of an entity is an important factor, but at the same time completely ignores West Virginia's analysis and rulings on this precise issue. Maryland Stadium Auth., 407 F.3d at 261-262 quoted in Defendant's Response at p. 9.

Rodriguez argues that this case is more akin to University of Rhode Island v. A.W. Chesterton Co., 2 F.3d 1200 (1st Cir. 1993). It is important to note that University of Rhode Island is one of the *minority* of cases holding that a university's governing body was not an alter ego of the state.[5] In University of Rhode Island, the First Circuit acknowledged that "[s]tate court decisions are entitled to great deference in our diversity and sovereign immunity determination." University of Rhode Island, 2 F.3d at 1205. The First Circuit further went on to state that Rhode Island courts had not spoken conclusively as to whether the University of Rhode Island was an alter ego of the state thereby requiring the First Circuit to engage in an extensive analysis. Id. The First Circuit differentiated University of Rhode Island from Moor v. Alameda County, 411 U.S. 693 (1973), in which the United States Supreme Court had the "clearest indication possible" from California's Supreme Court on the status of California counties and used it as a basis for determining diversity jurisdiction. Id. at 1205. In this case, the West Virginia Supreme Court gave "the clearest indication possible" that the University is an arm of the State and did so years ago. Therefore, this case is clearly distinguishable from University of Rhode Island.

---

[5] As Rodriguez acknowledges in his Response, the vast majority of federal courts sitting in diversity hold that a state university's governing body in an alter ego of the state. See e.g. Howerton v. Ogletree, 466 F.Supp.2d 182 (D.D.C. 2006); Maryland Stadium Auth., 407 F.2d 255; Competitive Tech v. Fujitsu Limited, 286 F.Supp.2d 1118 (N.D. Cal. 2003); Llewellyn-Waters v. University of Puerto Rico, 56 F.Supp.2d 159 (D.P.R. 1999); University of South Alabama v. American Tobacco Co., 168 F.3d 405 (11th Cir. 1999); Alabama State Univ. v. Baker & Taylor, Inc., 998 F.Supp. 1313 (N.D. Ala. 1998); University of Tennessee v. United States Fidelity & Guaranty, 670 F.Supp. 1379 (E.D. Tenn. 1987); South Dakota Bd. of Regents v. Hoops, 624 F.Supp. 1179 (D.S.D. 1986); Hughes-Bechtol, Inc., 737 F.2d 540; Ronwin v. Shapiro, 657 F.2d 1071 (9th Cir. 1981).

Simply stated, the status of the University as an arm of the State is well-established by numerous decisions and cannot be wishfully ignored. Rodriguez's invitation for this Court to reach an unprecedented and opposite conclusion should be rejected and this action remanded.

**B.	The current action is a "suit."**

Rodriguez's argument that this action is subject to federal jurisdiction because "suits for declaratory judgment have been held not to be suits against the State" is also without merit. Pittsburgh Elevator Co. v. West Virginia Bd. of Regents, 172 W.Va. 743, 753, 310 S.E.2d 675, 686 (1983) quoted in Defendant's Response at p. 5, fn. 4. This dicta cited by Rodriguez in his response is from Douglass v. Koontz, 137 W.Va. 345, 71 S.E.2d 319 (1952). In Douglass, the West Virginia Supreme Court of Appeals held that "[a] suit against the state tax commissioner for a declaratory judgment to determine whether the Business and Occupation Tax … is applicable to a given state of facts, which suit seeks only to construe the statute and direct the parties, is not a suit against the State …" Douglass, Id. at Syl. pt. 1. In other words, declaratory judgment actions seeking only a declaration as to whether a statute is applicable and which do not affect any proprietary rights of the State, or any of its governmental arms, are not suits for purposes of statutory immunity. Such is not the case in this action which involves an employment contract and Rodriguez's obligations to pay under the employment contract. Moreover, even if Rodriguez's argument had any merit, it was abrogated by the filing of the Amended Complaint in which the University asserted a breach of contract claim and to which Rodriguez asserted a counterclaim.

**C.	The University cannot waive diversity and concede federal jurisdiction.**

Rodriguez argues that the University conceded that it is a citizen of West Virginia in the Complaint and the Amended Complaint by pointing out that the University resides in West

Virginia. This argument is contrary to established authority and is flawed for a number of reasons.

First and foremost, the University cannot waive diversity and voluntarily assume federal diversity jurisdiction. See State Highway Comm'n of Wyoming v. Utah Const. Co., 278 U.S. 194, 199 (1929); University of Rhode Island, 2 F.3d at 1203; Krieger v. Trane Co., 765 F.Supp. 756, 762 (D.D.C. 1991). The University could not be subject to federal diversity jurisdiction even if the University pled that it was a "citizen" of West Virginia. Second, residency and citizenship are not synonymous. See Mississippi Band of Choctaw Indians v. Holyfield, 490 U.S. 30, 48 (1989). Therefore, the classification of the University as a resident in no way concedes citizenship for purposes of diversity jurisdiction even assuming that the University could waive diversity. Third, the University immediately moved to remand this action once it was removed from the Circuit Court of Monongalia County, West Virginia, which shows a clear intention not to submit to federal jurisdiction even if the University could. Accordingly, Rodriguez's argument that the University conceded or voluntarily assumed diversity jurisdiction also has no merit.

## II. RODRIGUEZ'S REQUEST FOR JURISDICTIONAL DISCOVERY IS FURTHER EVIDENCE OF THE IMPROPER REMOVAL OF THIS ACTION.

Rodriguez requests jurisdictional discovery as to whether the University is subject to diversity jurisdiction.[6] Such a request is disingenuous as Rodriguez is the removing party bearing the burden of showing that federal jurisdiction was properly invoked. See McCoy, 147 F.Supp.2d at 486. Requesting jurisdictional discovery to prove that the University is not an arm

---

[6] Rodriguez seeks to explore further any relationship between the University and the West Virginia University Foundation, Inc. based on his assumption that, in the event liquidated damages were owed to Rodriguez by the University under the employment contract at issue, the damages would be paid by the Foundation and not the University. Defendant's Response at p. 10. However, the employment contract at issue does not provide that any liquidated damages would be paid by the Foundation, but rather the University, and vice versa.

of West Virginia is prima facie evidence that even Rodriguez has doubts regarding the removability of this action. "[F]ederal courts construe the removal statute narrowly, *resolving any doubts against removability*." (*emphasis* added) Somlyo, 932 F.2d at 1045-46.

On the other hand, the University, as the non-removing party, may request jurisdictional discovery as a non-removing party is not expected to accept the removing party's bald assertions of federal jurisdiction as true. See e.g. Clark v. Milam, 813 F.Supp. 431, 435 (S.D.W.Va. 1993); Williams v. Advertising Sex LLC, 2007 WL 2570182, * 1 (N.D.W.Va. 2007) (slip copy). The need for jurisdictional discovery by the University is evident in this case in light of Rodriguez's claim to have changed citizenship from West Virginia to Michigan on the day this action was filed. Accordingly, as Rodriguez expresses doubt as to the proper invocation of federal jurisdiction, this doubt by the removing party must be read in favor of remand.

### III. RODRIGUEZ'S CLAIM OF MICHIGAN CITIZENSHIP IS FACIALLY INADEQUATE.

The University contends that the Court need not address Rodriguez's claim of Michigan citizenship as the University is an arm of the State and not subject to diversity jurisdiction. Nevertheless, because Rodriguez claims Michigan citizenship as a basis for invoking diversity jurisdiction, the University is compelled to address this issue. Upon information and belief, Rodriguez was not a citizen of Michigan, but rather West Virginia, on the date this action was filed. In his response, Rodriguez completely ignores the analysis employed by this Court in a similarly situated case, Mylan Pharmaceuticals v. Cunard, civil action number 1:06-cv-117 (Sept. 5, 2006), in lieu of his continued argument that certain limited factors are determinative of citizenship. In fact, the University seeks jurisdictional discovery to further explore Rodriguez's allegation that he was not a citizen of West Virginia at the time this action was filed in the event the Court does not otherwise remand this action.

As previously stated, "diversity of citizenship is assessed at the time the action is filed." Freeport-McMoRan, 498 U.S. at 428. Furthermore, "[d]iversity jurisdiction is unaffected by changes in citizenship of parties after complaint has been filed." Jones v. Law Firm of Hill and Ponton, 141 F.Supp.2d 1349, 1355 (M.D. Fla. 2001) (internal citations omitted). In determining intent for purposes of establishing citizenship, the court must consider the totality of the evidence and afford no single factor controlling weight. Greenblatt v. Gluck, 265 F.Supp.2d 346, 351 (S.D.N.Y. 2003). However, a person's residence provides *prima facie* evidence of domicile. Willis v. Westin Hotel Co., 651 F.Supp. 598, 601 (S.D.N.Y. 1986) (internal citations omitted).

A presumption exists in favor of an original or former domicile as opposed to an acquired one when determining diversity jurisdiction. Herzog v. Herzog, 333 F.Supp. 477, 478 (W.D. Pa. 1971). Moreover, making known an intention to take employment in another state is not alone sufficient to establish citizenship in light of other factors. See e.g. Webb v. Nolan, 361 F.Supp. 418, 421 (D.C.N.C. 1972). Specifically, in Mylan Pharmaceuticals v. Cunard, civil action number 1:06-cv-117 (Sept. 5, 2006), this Court held that the defendant employee was a citizen of West Virginia, not Georgia, in a lawsuit brought by his employer even though the defendant was residing in Georgia, had begun working for another employer, was in the process of buying a house in Georgia, and intended to work and reside in Georgia with his family at the time the action was filed.

Rodriguez acknowledges that he bears the burden of proving federal jurisdiction. Lew v. Moss, 797 F.2d 747, 749 (9th Cir. 1986) cited in Defendant's Response at p. 15. Rodriguez further asserts that he must prove by clear and convincing evidence that he changed his domicile to Michigan prior to the commencement of this action on December 27, 2007. Brignoli v. Balch, Hardy & Scheinman, Inc., 696 F.Supp. 37, 40-41 (S.D.N.Y. 1988) cited in Defendant's

13

Response at p. 16. Rodriguez attaches documentation in support of his assertion that he was a citizen of Michigan on December 27, 2007. Rather than support Rodriguez's argument, the documentation raises suspicion considering that the documentation is dated either the day before the action was filed or the day the action was filed. In other words, Rodriguez claims to have changed citizenship in one day. Such an allegation is skeptical, at best, especially in light of information that he continues to maintain a West Virginia residence and was served process at the West Virginia residence, the bulk of his personal property is located in West Virginia, his wife and children continue to reside in the West Virginia residence, and his children continue to attend school in West Virginia – all issues that Rodriguez fails to address or even acknowledge. Accordingly, in the unlikely event this Court would hold the University is a citizen of the State for diversity jurisdiction, the University asserts that this case should still be remanded as, upon information and belief, Rodriguez was not a citizen of Michigan, but rather West Virginia, on the date this action was filed. However, to the extent the Court believes that additional information is required to make this determination, the University renews its motion for jurisdictional discovery.

**IV.     THE UNIVERSITY IS ENTITLED TO COSTS AND EXPENSES, INCLUDING ATTORNEY FEES, INCURRED AS A RESULT OF REMOVAL.**

In light of Rodriguez's removal of this case despite well-established West Virginia law regarding the designation of the University as an arm of the State, the University continues to seek, along with remand, an order requiring Rodriguez to pay costs, expenses, and attorney fees incurred by the University as a result of removal pursuant to 28 U.S.C. § 1447(c). Rodriguez improperly removed this case under 28 U.S.C. § 1332 despite clear authority that the University, an arm of West Virginia, is not a citizen for purposes of diversity jurisdiction. See e.g. West Virginia ex rel. McGraw, 354 F.Supp.2d 660; Anchor Hocking Corp., 681 F.Supp. 1175. See

also Syl. pt. 1, City of Morgantown, 153 W.Va. 121, 168 S.E.2d 298 ("The Board of Governors of West Virginia University is a State agency, and, as such, is an arm of the State …").  As previously pointed out, Rodriguez should be well aware of this fact considering that his counsel in this case was counsel for the plaintiff in West Virginia ex rel. McGraw and moved to remand on this same basis as the University in this case.  Second, Rodriguez was clearly a citizen of West Virginia on the date this action was filed making any attempt to remove this action for diversity improper.  See supra at Sec. II.  Accordingly, the University seeks, along with remand, an order requiring Rodriguez to pay costs, expenses, and attorney fees incurred by the University as a result of removal pursuant to 28 U.S.C. § 1447(c).

## CONCLUSION

WHEREFORE, the plaintiff, West Virginia University Board of Governors for and on behalf of West Virginia University, respectfully request this Honorable Court grant its Motion to Remand not only as the University, as an arm of the State, is not a citizen for purposes of diversity jurisdiction under 28 U.S.C. § 1332, but also as the defendant, Richard Rodriguez, was a citizen of West Virginia when this action was filed.  The University further seeks reimbursement for costs, expenses, and attorney fees incurred by the University as a result of the removal pursuant to 28 U.S.C. § 1447(c).

**WEST VIRGINIA UNIVERSITY BOARD OF GOVERNORS for and on behalf of WEST VIRGINIA UNIVERSITY,**

By Counsel,

/s/ Thomas V. Flaherty
Thomas V. Flaherty (WV Bar No. 1213)
Jeffrey M. Wakefield (WV Bar No. 3894)
Jaclyn A. Bryk (WV Bar No. 9969)

Flaherty, Sensabaugh & Bonasso, PLLC
Post Office Box 3843
Charleston, West Virginia  25338-3843
Telephone: (304) 345-0200
Facsimile: (304) 345-0260

and

Robert P. Fitzsimmons (WV Bar No. 1212)
Robert J. Fitzsimmons (WV Bar No. 9656)
Fitzsimmons Law Offices
1609 Warwood Avenue
Wheeling, West Virginia 26003
Telephone: (304) 277-1700
Facsimile: (304) 277-1705