IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
AT CLARKSBURG

WEST VIRGINIA UNIVERSITY
BOARD OF GOVERNORS for and on
behalf of WEST VIRGINIA UNIVERSITY,

      Plaintiff,

      v.           CIVIL ACTION NO. 1:08-CV-41
                                     (Hon. John Preston Bailey)

RICHARD RODRIGUEZ,

      Defendant.

## **ORDER GRANTING IN PART AND DENYING IN PART MOTION TO REMAND**

Pending before this Court is Plaintiff West Virginia University Board of Governors' Motion to Remand and Motion for Costs, Expenses, and Attorney Fees (Doc. 7). Also pending is Plaintiff West Virginia University Board of Governors' Motion for Jurisdictional Discovery (Doc. 13). This Court, having reviewed the motions and the memoranda submitted with regard thereto, finds that the Motion to Remand should be granted and that the Motion for Discovery should be denied as moot.

**Procedural Background**

Richard Rodriguez was the head football coach at West Virginia University. On December 19, 2007, Coach Rodriguez resigned his position to take the head coaching job at the University of Michigan. On December 27, 2007, the plaintiff (WVU or the University) filed this action in the Circuit Court of Monongalia County, West Virginia, seeking a declaration that the employment contract between WVU and Coach Rodriguez is a valid and enforceable contract and that Coach Rodriguez is required to pay WVU liquidated

1

damages arising out of the employment agreement.

On January 16, 2008, Coach Rodriguez removed this action to this Court, asserting jurisdiction under the diversity statute, 28 U.S.C. § 1332.

The University has filed a motion to remand on two grounds. First, that the University is an arm or alter ego of the State of West Virginia, thereby precluding diversity jurisdiction, and second, that Coach Rodriguez was a citizen of the State of West Virginia on the date that the suit was filed, again precluding diversity jurisdiction. The University has also filed a motion seeking permission to conduct jurisdictional discovery on the issue of whether Coach Rodriguez was a citizen of West Virginia on the date of filing this action.

## Legal Standard

When an action is removed from state court, a federal district court is required to first determine whether it has original jurisdiction over the plaintiff's claims. In this case, that issue depends on whether there is complete diversity of citizenship between the parties.[1]

"The burden of demonstrating jurisdiction resides with 'the party seeking removal.'" **Maryland Stadium Authority v. Ellerbe Becket Incorporated**, 407 F.3d 255, 260 (4th Cir. 2005), citing **Mulcahey v. Columbia Organic Chems. Co.**, 29 F.3d 148, 151 (4th Cir. 1994). Because removal jurisdiction raises significant federalism concerns, federal courts are directed to construe removal statutes strictly. **Shamrock Oil & Gas Corp. v. Sheets**, 313 U.S. 100 (1941).

If federal jurisdiction is doubtful, a remand to state court is required. **Maryland Stadium**, 407 F.3d at 260. On the other hand, if this Court has jurisdiction, it is required

---

[1] The Court notes that the amount in controversy exceeds $75,000 and that this contract dispute does not implicate federal question jurisdiction.

to exercise it. **Gum v. General Electric Co.**, 5 F.Supp.2d 412, 415 (S.D.W.Va. 1998) ("It is well-established federal courts have a 'virtually unflagging obligation . . . to exercise the jurisdiction given them.'").

It is beyond dispute that a state is not a citizen for purposes of diversity jurisdiction. **Moor v. County of Alameda**, 411 U.S. 693, 717 (1973); **Postal Telegraph Cable Co. v. Alabama**, 155 U.S. 482, 487 (1894); **Maryland Stadium**, *supra* at 260; 13B Wright, Miller & Cooper, **Federal Practice and Procedure**: Jurisdiction 2d § 3602 (1984). An action between a state and a citizen of another state is not a suit between citizens of different states, and diversity jurisdiction does not exist. **Postal Telegraph**, *supra* at 487.

"In addition, public entities and political subdivisions, such as municipalities, are also not 'citizens of a state' if they are an 'arm or alter ego of a state.'" **Maryland Stadium**, *supra* at 260, citing **Moor**, *supra* at 717-18; **State Highway Comm'n of Wyoming v. Utah Constr. Co.**, 278 U.S. 194, 199 (1929).

"For a suit to be 'between citizens of different states,' § 1332(a), 'each distinct interest should be represented by persons, all of whom are entitled to sue, or may be sued, in the federal courts.' **Strawbridge v. Curtiss**, 3 Cranch. 267, 7 U.S. 267 (1806). 'That is, . . . each of the persons concerned . . . must be competent to sue, or liable to be sued, in [federal court].' *Id*." **Maryland Stadium**, *supra*, at 260.

Accordingly, if the University is an "arm or alter ego" of the State of West Virginia, this Court lacks jurisdiction to hear this case.

"In determining whether a public entity is an alter ego of the state, and therefore, not a 'citizen' under § 1332, courts have generally looked to the standards announced in cases

3

addressing whether governmental entities are entitled to Eleventh Amendment immunity as an arm of the state." **Maryland Stadium**, *supra* at 260, citing **Univ. of S. Ala. v. Am. Tobacco Co.**, 168 F.3d 405, 412 (11th Cir. 1999) and **Univ. Of R.I. v. A.W. Chesterton Co.**, 2 F.3d 1200, 1202 n. 4, 1203 (1st Cir. 1993).

In making such an analysis, the Fourth Circuit typically applies the four factor test first announced in **Ram Ditta v. Md. National Capital Park & Planning Comm'n**, 822 F.2d 456 (4th Cir. 1987), to determine whether a governmental entity is an "arm of the state" under either the Eleventh Amendment or for purposes of citizenship under § 1332. **Maryland Stadium**, *supra* at 261.

The four factors adopted in **Ram Ditta** are (1) whether the judgment will have an effect on the state treasury; (2) whether the entity exercises a significant degree of autonomy from the state; (3) whether the entity is involved in local versus statewide concerns; and (4) how the entity is treated as a matter of state law. 822 F.2d at 457-58.

The first factor, effect on the treasury, is often treated as a controlling factor for Eleventh Amendment immunity analysis. *See* **Ram Ditta** at 457; **Gray v. Laws**, 51 F.3d 426, 433 (4th Cir. 1995). In the diversity analysis, however, effect on the treasury lacks the same level of importance. **Maryland Stadium**, *supra* at 262.

"[W]hile the impact of the litigation on the state treasury remains the most salient factor in determining whether the University is an alter ego of the state for purposes of § 1332, the inquiry is reversed: that is, while we usually look to whether the state will be liable for a judgment against the entity in question, in cases in which the state entity is plaintiff, we will look to whether any recovery by the entity will inure to the benefit of the state." **Id.**

4

The second factor, autonomy, is not a "free-wheeling" inquiry but rather is analyzed by considering whether the state retains a veto power over the entity's actions, the origins of the entity's funding, and who appoints the entity's directors. ***Id.***

With respect to the fourth factor, state law, "the question whether a particular state agency has the same kind of independent status as a county or is instead an arm of the state, and therefore 'one of the United States' within the meaning of the Eleventh Amendment, is a question of federal law. But that federal question can be answered only after considering the provisions of state law that define the agency's character." ***Regents of the Univ. of California v. Doe***, 519 U.S. 425 n. 5, 429 (1997).

**Persuasive Authority**

It is also instructive to review how other courts have viewed the West Virginia higher education system and other universities and higher education entities.

In ***Hughes-Bechtol, Inc. v. West Virginia Board of Regents***, 737 F.2d 540 (6th Cir. 1984), the Sixth Circuit held that the West Virginia Board of Regents[2] was, in fact, an

---

[2]"The governing authority for the institutions of higher learning in [West Virginia] has undergone extensive restructuring within the past several decades. The recent history of these alterations . . . can be summarized briefly. The West Virginia Board of Governors existed as the primary governing authority prior to the 1969 creation of the West Virginia Board of Regents. *See* West Virginia Code § 18-26-1, et seq. (1969). In 1989, the West Virginia Legislature abolished the Board of Regents and divided its powers between the University of West Virginia Board of Trustees, to govern the West Virginia University system, and the Board of Directors of The State College System, to govern the state colleges, community colleges, and other post-secondary education systems. *See generally,* ***University of West Virginia Bd. of Trustees ex rel. West Virginia University v. Graf****,* 205 W.Va. 118, 516 S.E.2d 741 (1998); ***City of Morgantown v. Ducker****,* 153 W.Va. 121, 168 S.E.2d 298 (1969).

In 2000, the West Virginia Legislature abolished the University of West Virginia Board of Trustees and the Board of Directors of The State College System. *See generally,* ***Trimble v. West Virginia Bd. of Directors***, 209 W.Va. 420, 549 S.E.2d 294 (2001). The Legislature replaced those two entities with (1) an Institutional Board of Governors for each

5

arm of the State of West Virginia. The Sixth Circuit stated that the "question whether the Board is and was a citizen of the State for purposes of diversity jurisdiction is purely a question of federal law. In this case, however, we hold that it is governed by the law of West Virginia." 737 F.2d at 543.

**Kondos v. West Virginia Board of Regents**, 318 F.Supp. 394 (S.D.W.Va. 1970), *aff'd*, 441 F.2d 1172 (4th Cir. 1971), was an action by a former football coach at Marshall University for breach of contract and libel and slander. The district court dismissed the action under West Virginia's sovereign immunity provision in Article VI, Section 35 of the West Virginia Constitution. In doing so, the district court found that West Virginia case law finding the Board of Regents to be an arm of the state were binding on it. This decision was affirmed by the Fourth Circuit.

In its discussion, the district court stated that "it is elemental that education, which is [the Board of Regents'] business, is a governmental function of the state and, of course, the carrying on of an athletic program is an important and necessary element in the educational process, especially at institutions of higher learning." 318 F.Supp. at 396, citing **Glover v. Sims**, 121 W.Va. 407, 3 S.E.2d 612 (1939); **State ex rel. Board of Governors of West Virginia University v. Sims**, 134 W.Va. 428, 59 S.E.2d 705 (1950).

With respect to other universities, "almost universally" courts have found that public

---

higher education institution, an example of which is the Appellant WVU Board of Governors; and (2) the West Virginia Higher Education Commission . . .. *See* W.Va.Code § 18B-1B-1, et seq (2000)." **West Virginia Board of Governors v. West Virginia Higher Education Policy Commission**, 221 W.Va. 187, 653 S.E.2d 649, 652 (2007).

6

state universities are "arms of the state."[3] ***Maryland Stadium Authority v. Ellerbe Becket***

---

[3]Appellate court decisions finding a state university or university system to be "arms of the state" include the following:

| | |
|---|---|
| First Circuit: | ***Pinto v. Universidad De Puerto Rico***, 895 F.2d 18 (1st Cir. 1990) |
| Second Circuit: | ***Dube v. State Univ. of New York***, 900 F.2d 587 (2nd Cir. 1990) |
| Third Circuit: | ***Bowers v. NCAA***, 475 F.3d 524 (3d Cir. 2007) (Univ. of Iowa) |
| Fourth Circuit: | ***Maryland Stadium Authority v. Ellerbe Becket Inc.***, 407 F.3d 255 (4th Cir. 2005) (Univ. of Maryland)<br>***Litman v. George Mason Univ.***, 186 F.3d 544 (4th Cir. 1999)<br>***Huang v. Gov's of Univ. of N.C.***, 902 F.2d 1134 (4th Cir. 1990)<br>***Richard Anderson Photography v. Brown***, 852 F.2d 114 (4th Cir. 1988), *cert. denied*, 489 U.S. 1033 (1989) (Radford University) |
| Fifth Circuit: | ***Richardson v. Southern Univ.***, 118 F.3d 450 (5th Cir. 1997)<br>***Laxey v. La. Bd. Of Tr.***, 22 F.3d 621 (5th Cir. 1994)<br>***Gay Student Services v. Texas A & M Univ.***, 737 F.2d 1317 (5th Cir. 1984), *cert. denied and appeal dismissed*, 471 U.S. 1001 (1985)<br>***United Carolina Bank v. Bd. of Regents of Stephen F. Austin State Univ.***, 665 F.2d 553 (5th Cir. 1982)<br>***Jagnandan v. Giles***, 538 F.2d 1166 (5th Cir. 1976), *cert. denied*, 432 U.S. 910 (1977) (Mississippi State Univ.) |
| Sixth Circuit: | ***Robinson v. Univ. of Akron Sch. of Law***, 307 F.3d 409 (6th Cir. 2002)<br>***Carten v. Kent State Univ.***, 282 F.3d 391 (6th Cir. 2002)<br>***Hutsell v. Sayre***, 5 F.3d 996 (6th Cir. 1993) (Univ. of Kentucky)<br>***Estate of Ritter by Ritter v. Univ. of Michigan***, 851 F.2d 846 (6th Cir. 1988)<br>***Karmanos v. Baker***, 816 F.2d 258 (6th Cir. 1987) (Univ. of Mich.)<br>***Graham v. NCAA***, 804 F.2d 953 (6th Cir. 1986) (Univ. of Louisville)<br>***Hall v. Med. Coll. of Ohio at Toledo***, 742 F.2d 299 (6th Cir 1984), *cert. denied*, 469 U.S. 1113 (1985)<br>***Long v. Richardson***, 525 F.2d 74 (6th Cir. 1975) (Memphis State) |
| Seventh Circuit: | ***Takle v. Univ. of Wisc. Hosp. & Clinics Auth.***, 402 F.3d 768 (7th Cir. 2005)<br>***Kaimowitz v. Bd. of Trustees of Univ. of Illinois***, 951 F.2d 765 (7th Cir. 1991)<br>***Kashani v. Purdue Univ.***, 813 F.2d 843 (7th Cir. 1987), *cert. denied*, |

*Incorporated*, 407 F.3d 255, 262 (4th Cir. 2005).

In some circuits, the issue was not even disputed. For instance, in *University of South Alabama*, the Eleventh Circuit succinctly noted, "[i]n the context of Eleventh Amendment immunity, we have held that state universities are 'agencies or instrumentalities' of the state, and thus are immune from suit in federal court." *Univ. of S. Ala.*, 168 F.3d at 412. *See also Watson v. Univ. of Utah Med. Ctr.,* 75 F.3d 569, 575 (10th Cir.1996) ("Our cases have consistently found state universities are arms of the state."). In fact, research reveals only two circuit court opinions concluding

---

                469 U.S. 846 (1987)

Eighth Circuit:       *Walstad v. Univ. of Minn. Hosps.*, 442 F.2d 634 (8th Cir. 1971)

Ninth Circuit: *BV Eng'g v. UCLA*, 858 F.2d 1394 (9th Cir. 1988), *cert. denied*, 489 U.S. 1090 (1989)
    *Ronwin v. Shapiro*, 657 F.2d 1071 (9th Cir. 1981) (Univ. of Ariz.)
    *Spaulding v. Univ. of Washington*, 740 F.2d 686 (9th Cir. 1984), *cert. denied*, 469 U.S. 1036 (1984)
    *Rutledge v. Arizona Bd. of Regents*, 660 F.2d 1345 (9th Cir. 1981), *aff'd sub nom. Kush v. Rutledge*, 460 U.S. 719 (1983)

Tenth Circuit:    *Buchwald v. Univ. of N.M. Sch. of Med.*, 159 F.3d 487 (10th Cir. 1998)
    *Watson v. Univ. of Utah Med. Ctr.*, 75 F.3d 569 (10th Cir. 1996)
    *Prebble v. Brodrick*, 535 F.2d 605 (10th Cir. 1976) (Univ. of Wyoming)
    *Brennan v. Univ. of Kansas*, 451 F.2d 1287 (10th Cir. 1971)

Eleventh Circuit:   *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405 (11th Cir. 1999)
    *Lassiter v. Alabama A & M Univ. Bd. of Trustees*, 3 F.3d 1482 (11th Cir. 1993)
    *Harden v. Adams*, 760 F.2d 1158 (11th Cir. 1985) (Troy State Univ.)

that a particular state university was not an arm of the state.[4]  See **A.W. Chesterton**, 2 F.3d at 1211, **Kovats v. Rutgers**, 822 F.2d 1303, 1312 (3d Cir.1987)."

**Id.**, at 263.  In a footnote, the **Maryland Stadium** court noted that Rutgers involved a "somewhat unique situation because Rutgers University was originally a private university that was converted to a state university in 1956."  **Id.**

As noted in **Maryland Stadium**, despite the overwhelming precedent, "each state university must be evaluated in light of its own unique characteristics."  **Id.** at 263, quoting **A.W. Chesterton**, supra at 1204.

## Discussion

While **Maryland Stadium** states that "the question of whether an entity is an alter ego of the state is a highly fact-intensive undertaking," 407 F.3d at 257, it is clear that the Court resolved that question by reference to the Maryland statutory framework and Maryland judicial decisions.  This Court will now examine the **Ram Ditta** factors in the same manner.

**I.    The outcome of this case will have an effect on state funds.**

It is clear that the outcome of this litigation will have an effect on state funds. Moneys paid to or held by the University are state funds.  In **City of Morgantown v. West Virginia Board of Regents**, 177 W.Va. 520, 522, 354 S.E.2d 616, 619 (1987), the West Virginia Supreme Court held that "[p]roceeds from athletic and entertainment events

---

[4]In **University of Tennessee v. U.S.F. & G.**, 670 F.Supp. 1379, 1387 (E.D.Tenn. 1987), the court noted that since 1980, there were 49 reported decisions finding in favor of alter ego status and only three against.

9

sponsored by West Virginia University are state funds held in special revenue accounts under W.Va. Code § 12-2-2 (1985). Special revenue accounts are state accounts kept separate from the general revenue due to a legislative determination that money generated by a particular activity should be allocated to a specific purpose. Such accounting does not remove the funds from the state treasury or destroy the public accountability of those who spend them."

Similarly, in *City of Morgantown v. Ducker*, 153 W.Va. 121, 126, 168 S.E.2d 298, 301 (1969), the West Virginia Supreme Court held that "[m]oneys received and administered by the board of governors are public moneys and such moneys, whether derived from admission fees to athletic contests, from tuition fees, from medical and hospital services, and from appropriations by the Legislature, are public moneys, *State ex rel. Board of Governors of West Virginia University v. Sims*, 134 W.Va. 428, 59 S.E.2d 705, and when accepted, received or collected by the board must be paid into the state treasury and credited to the proper fund as provided by Section 2, Article 2, Chapter 12, Code, 1931, as amended, and can be withdrawn from the proper fund in the state treasury only upon a warrant issued by the auditor on the treasurer and by the check of the treasurer upon such warrant as provided by Section 1, Article 3, Chapter 12, Code, 1931, as amended."

Based upon the above authority, it is clear that whether or not the University is successful in its quest to recover, the "buy-out" moneys will have an effect on state funds.

The defendant argues that, because former head basketball coach John Beilein paid the agreed "buy-out" money to the West Virginia University Foundation, the funds sought in this case are not state funds. This Court will not consider what may have

transpired as part of an agreed settlement with respect to Coach Beilein.  The contract in question, under which the "buy-out" moneys are sought, is a contract between Coach Rodriguez and the West Virginia University Board of Governors for and on behalf of West Virginia University.  That contract, assuming that it is valid and enforceable (an issue not presently before this Court), requires Coach Rodriguez to pay the money to the University.

**II.     The University does not have significant autonomy from the state.**

A review of the statutes and case law regarding West Virginia University and its Board of Governors demonstrates that, while the Board of Governors has great latitude in the day to day operations of the University, it can hardly be said to be autonomous.  Among the ties to the state are the following:

1. Twelve of the eighteen members of the Board of Governors are appointed by the Governor of the state with the advice and consent of the state senate.  W.Va. Code § 18B-2A-1(c)(5).  Each member is required to take an oath as prescribed by Section five, Article IV of the Constitution of West Virginia.  W.Va. Code § 18B-2A-1(l).  *See* ***Maryland Stadium***, 407 F.3d at 264 (gubernatorial appointment is "a key indicator of state control").

2. A member of the Board of Governors appointed by the Governor may only be removed "for official misconduct, incompetence, neglect of duty or gross immorality and then only in the manner prescribed by law for the removal of the state elective officers by the Governor."  W.Va. Code § 18B-2A-1(m).

3. The University has no power to tax.  *See **Id.***

4. Moneys may only be withdrawn from University accounts via a check issued by the state treasurer.  W.Va. Code § 12-3-1.  *See*  ***City of Morgantown v. Ducker***, 153 W.Va. 121, 126, 168 S.E.2d 298, 301 (1969).

5. Checks may only be issued upon requisition by the University to the state auditor. W.Va. Code § 12-3-5. *See Id.*

6. All property of the University is property of the state. "Though the title to all property of the university is vested in the board of governors the board holds such property in trust for the State and not as a separate or independent corporate entity." *See Id.*

7. Employees of the University are state employees and are provided with the benefit of the West Virginia Public Employees Grievance Procedure. W.Va. Code § 6C-2-1.

8. Salaries for classified employees of the University are set by state statute. W.Va. Code § 18B-9-3. *See **University of Tennessee v. USF&G**,* 670 F.Supp. 1379, 1384 (E.D. Tenn. 1987).

9. The schedule of all tuition and fees charged by the University must be certified to the Legislative Auditor. W.Va. Code § 18B-10-1(f).

10. The Board of Governors is charged with direction of the preparation of a budget request to the legislature for the University. W.Va. Code § 18B-2A-4(d).

11. The University must obtain the approval of the Secretary of Education and the Arts to transfer amounts between items of appropriation. W.Va. Code § 18B-5-2a.

12. The University must submit copies of its annual audited financial statements to the Legislative Oversight Commission and the Joint Committee on Government and Finance. W.Va. Code § 18B-5-9(a)(3). *See **Maryland Stadium**,* 407 F.3d at 264.

The defendant argues that the fact that this case was filed by private counsel rather than by the state Attorney General is an indication that the University is not an arm of the state. The defendant overlooks West Virginia Code § 18B-2A-4(y), which provides as

follows:

> Notwithstanding any other provision of this code to the contrary, [the Board of Governors may] acquire legal services that are necessary, including representation of the governing boards, their institutions, employees and officers before any court or administrative body. The counsel may be employed either on a salaried basis or on a reasonable fee basis. In addition, the governing boards may, *but are not required to*, call upon the Attorney General for legal assistance and representation as provided by law.

(Emphasis added).

Based upon the foregoing, this Court is of the opinion that the University is not significantly autonomous from the State of West Virginia.

### III. The University is involved in statewide concerns.

As the flagship university of the State of West Virginia, the University is clearly of statewide concern and interest. In fact, it is often joked that on home football game days, Morgantown is the largest city in the state.

In ***State ex rel. Bd. of Govs. of W. Va. Univ. v. Sims***, 134 W.Va. 428, 59 S.E.2d 705 (1950), the West Virginia Supreme Court of Appeals states that:

> No one can successfully assert that a proper athletic program is not appropriate to a great educational institution. The physical welfare of young men and women cannot with propriety be ignored. Education is a proper function of state government and includes appropriate physical development as well as mental and moral. Granting that mistakes may have been made throughout the land in overemphasis of inter-collegiate athletic activities, such

13

fact can in no degree overshadow the wholesome importance of properly regulated and directed inter-collegiate and intra-mural athletic programs. The thousands of West Virginia boys and girls who through the years become students at the West Virginia University have better opportunity for well-rounded education by reason of the stadium's being on the campus.

134 W.Va. at 435-36, 59 S.E.2d 705.

Later in the same decision, the West Virginia Supreme Court states:

Collegiate athletic activities, especially in the realm of football, in the opinion of many thoughtful alumni and supporters of the university, are a great asset in maintaining a high caliber student body, and serve as an aid in the public relations of the university and every educational institution of higher learning.

*Id*. at 438.

The defendant admits that "West Virginia University is engaged in educating the youth of West Virginia, and that such education is a state concern and a traditional governmental function." (Defendant's Response to Motion to Remand, p. 13 (Doc. 18)).

**IV.** **State law clearly defines the University as an arm of the state.**

Decisions of the West Virginia Supreme Court of Appeals make it abundantly clear that West Virginia deems West Virginia University to be an arm of the state. Syllabus Point 1 of ***University of West Virginia Board of Trustees v. Graf***, 205 W.Va. 118, 516 S.E.2d 741 (1998) holds:

"The Board of Governors of West Virginia University is a State agency, and, as such, is an arm of the State and, under Article VI, Section 35 of the Constitution of West Virginia, is immune from suit to enforce payment of a

14

claim against such board." Syllabus Point 1, *City of Morgantown v. Ducker*, 153 W.Va. 121, 168 S.E.2d 298 (1969).

Syllabus Point 2 of *State ex rel. Bd. of Govs. of W. Va. Univ. v. Sims*, 134 W.Va. 428, 59 S.E.2d 705 (1950) holds that "[b]y legislative fiat, Code, 18-11-1, as amended by Chapter 73, Acts of the Legislature, 1947, and Section 1-a, Chapter 89, Acts of the Legislature, 1947, the board of governors of West Virginia University is a public and governmental body and as such is an arm of the State . . .."

The defendant argues in its brief that the University waived the issue of its citizenship by alleging in the Complaint that the University was a resident of West Virginia. As noted by 13 Wright, Miller & Cooper, *Federal Practice and Procedure*: Jurisdiction 2d § 3522 (1984), "the parties cannot waive lack of jurisdiction by express consent, or by conduct, or even by estoppel . . .."

Based upon the foregoing, this Court holds that West Virginia University and its Board of Governors are arms and alter egos of the State of West Virginia and, therefore, are not citizens for purposes of 28 U.S.C. § 1332.

In light of this ruling, this Court need not address the issue of whether Coach Rodriguez was a citizen of West Virginia at the time of the filing of this action. Accordingly, the University's Motion for Jurisdictional Discovery (Doc. 13) is moot.

The University has also requested that this Court award it costs, expenses and attorneys fees incurred as a result of the removal. This Court denies the request, finding that the defendant had a colorable basis for removal and that the removal was not done in bad faith.

**Conclusion**

For the reasons stated above, Plaintiff West Virginia University Board of Governors' Motion to Remand and Motion for Costs, Expenses, and Attorney Fees **(Doc. 7)** is hereby **GRANTED IN PART AND DENIED IN PART**. This action is hereby **REMANDED** to the Circuit Court of Monongalia County for further proceedings. This Court does not award costs, expenses or attorneys fees to the plaintiff. Plaintiff West Virginia University Board of Governors' Motion for Jurisdictional Discovery **(Doc. 13)** is hereby **DENIED AS MOOT**.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record herein and to the Clerk of the Circuit Court of Monongalia County, West Virginia.

**DATED**: February 11, 2008.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE